## COMMONWEALTH *vs.* DANIEL A. RENDEROS.

Middlesex. October 8, 2003. - November 24, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Indecent Assault and Battery. Sex Offender. Sex Offender Registration and Community Notification Act. Parole. Practice, Criminal,* Parole, Argument by prosecutor.

At the trial of a criminal complaint charging the defendant with indecent assault and battery on a person who had attained fourteen years of age, in violation of G. L. c. 265, § 13H, the prosecutor's unobjected-to comments during his closing argument did not pose a substantial risk of a miscarriage of justice, where one comment was a fair inference as to the defendant's state of mind, and where a second comment, though improper, was not of such import as to create a basis for a new trial, given the instructions to the jury that they were to decide the case based on the evidence presented at trial and that closing arguments were not evidence. [425-427]

At the trial of a criminal complaint charging the defendant with indecent assault and battery on a person who had attained fourteen years of age, in violation of G. L. c. 265, § 13H, the judge lacked statutory authority to sentence the defendant to community parole supervision for life, in the absence of a motion from the Commonwealth, where, under G. L. c. 265, § 45, when read in conjunction with G. L. c. 275, § 18, whenever a person is convicted of a first offense under G. L. c. 265, § 13H, a sentence of community parole supervision for life may be imposed only after the filing of a motion by the district attorney requesting a determination on the matter and after a hearing and appropriate findings. [427-434]

This court ordered the resentencing of a criminal defendant who had been convicted of two counts of indecent assault and battery on a person who had attained fourteen years of age, in violation of G. L. c. 265, § 13H, where the sentencing judge's improper belief that lifetime community parole supervision could be imposed influenced his decision as to the appropriate punishment for the defendant's two convictions. [434-435]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on October 30, 2000.

The case was tried before by *Jonathan Brant,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John T. Plouffe* for the defendant.

*Heather E. Hall*, Assistant District Attorney (*Joshua I. Spirn*, Assistant District Attorney, with her) for the Commonwealth.

GREANEY, J. A jury in the District Court found the defendant guilty on two counts of a complaint charging him with indecent assault and battery on a person who had attained fourteen years of age, G. L. c. 265, § 13H. The judge sentenced the defendant to terms of one year and two years in a house of correction, to be served concurrently, suspended for two years, and the judge ordered the defendant to stay away from the victim and to register as a sex offender. In addition, the judge sentenced the defendant, pursuant to G. L. c. 265, § 45, to a term of community parole supervision for life. The defendant appealed from his convictions and from his sentence of lifetime community parole. We transferred the appeal here on our own motion. We conclude that the judgments of conviction should stand. We further conclude that the judge could not commit the defendant, a first time offender, to community parole supervision for life, in the absence of a motion from the Commonwealth requesting a hearing to determine whether that sentence should be imposed. See G. L. c. 275, § 18. The defendant, therefore, must be resentenced.

1. The jury could have found the following facts. At about 9:15 P.M. on October 28, 2000, the victim, then sixteen years of age, was finishing her duties as a cashier at a grocery store in Burlington. While organizing items on an aisle shelf, the victim encountered the defendant, also an employee of the store, who was sweeping the aisle. The defendant, who was twenty-seven years of age, made a comment to the victim.[1] The victim stopped what she was doing and walked to the front of the store. There she retrieved some damaged items and carried them to a room in the back of the store.

As the victim entered the back room, she again met the defendant, who was mopping the floor. The victim set down the damaged items and tried to leave the room, but the defendant stood at the door. He touched her chest and her crotch with his hands. No one else was in the back room at the time.

---

[1] The substance of this comment is not a part of the record. On cross-examination, the victim agreed with the defendant's trial counsel that the defendant does not speak English well and, as a result, is difficult to understand.

The victim told the defendant that "he should not be doing this to [her]," pushed him, and ran up a nearby stairway. Reaching the top of the stairs, she went through the employee break room and entered the ladies' restroom. The victim thought that the defendant would not follow her there. When she came out of the restroom a couple of minutes later, however, the defendant was waiting outside.

The victim attempted to pass the defendant. As she did so, he commented that he liked her a lot and, reaching from behind, touched her breasts a second time. The victim told him to leave her alone. Pulling away from the defendant, the victim ran down the stairs and out into the front area of the store. Shortly thereafter, the victim received permission from the store manager to leave work early. She walked out of the store to the parking lot, where her mother and boy friend waited in her mother's automobile.

Sensing that her daughter was nervous, upset, and scared, the victim's mother asked what was wrong. The victim responded that the defendant had touched her "in private areas" and pointed to her breast and to her crotch area. The victim's mother immediately went into the store and confronted the manager, who telephoned the police. The victim, at times crying, recounted to the responding police officer what had happened.

The police officer found the defendant polishing the floor of the store. When asked by the officer for his account of what had happened, the defendant initially replied, "I don't know, what are you talking about?" The officer explained that he was investigating a report that the defendant had "grabb[ed] a young lady." The defendant responded, "I never touch, I never touch," and asked if he could tell his version of what had happened. The defendant then mimicked a sweeping motion to demonstrate to the police officer that he had been sweeping the stairs at the back of the store when he, accidentally, had bumped into the victim.

The defendant testified at trial through a Spanish interpreter. He stated that the contact between himself and the victim had been accidental and repeatedly denied that he had sexually assaulted the victim. According to the defendant, the victim had come up behind him while he was sweeping the stairs and he

inadvertently had tripped her. The defendant testified that the victim called him names which, for the most part, the defendant did not understand, because his English is "not perfect." He did understand, however, that she called him a "stupid Hispanic."[2]

2. We first consider the sole issue raised by the defendant in his appeal from his convictions — that comments made by the prosecutor in his closing argument improperly attributed to the defendant a state of mind for which there was no evidence. We view the challenged remarks "in the light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Coren*, 437 Mass. 723, 731 (2002), quoting *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984). Because defense counsel registered no objection, we review any impropriety to determine whether it was so gravely prejudicial as to pose a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Haskins*, 411 Mass. 120, 121 (1991).

The decisive issue at trial was the credibility of the victim and of the defendant. In closing, the defendant's trial counsel argued to the jury that the defendant's assertions of innocence were fully corroborated by testimony at trial that the defendant, on being questioned by the police officer, at first denied knowing anything about the incident. He stated:

"There was never anything that would indicate that he was aware of anything that was going on. When the officer said to him, what happened, he shrugged his shoulders, I don't know, he didn't know what he was talking about. And then when the officer told him about what [the victim] had alleged, his story was the story that he gave today which is consistent with what he said back then."

Seeking to persuade the jury that the defendant should not be believed, the prosecutor, in his closing argument, cast the same testimony in this manner:

"The police come, question the [d]efendant. At first the

_____
[2]The only other defense witness was a store employee, who testified that he had noticed the victim go up the stairway, and come down again, while the defendant was sweeping the stairs. The witness testified that he did not observe any interaction between the defendant and the victim.

[d]efendant denies any knowledge of anything happening because he figures he's going to get away with this. What happens? The police say, well, actually she told us you touched her. Well, in that case, I just bumped her."

We agree that there was no testimony at trial that the defendant "figure[d] he [was] going to get away with" the assault or that the defendant stated (either aloud or to himself) "in that case, I just bumped her" before demonstrating to the police officer that he had accidentally bumped into the victim while sweeping. We view the former remark, however, as a fair inference as to the defendant's state of mind that could reasonably be drawn from the officer's testimony as to the defendant's conduct.[3] In the context of the entire summation made by the prosecutor, the statement clearly was intended to counteract the argument made by the defendant's trial counsel that the jury should reach an alternate conclusion with respect to the defendant's state of mind (which also reasonably could be inferred from the evidence).[4] See *Commonwealth* v. *Rodriguez*, 437 Mass. 554, 565-566 (2002); *Commonwealth* v. *Lyons*, 426 Mass. 466, 472 (1998). There was no error.

The prosecutor arguably should not have attributed the words, "in that case, I just bumped her" to the defendant. We have repeatedly cautioned prosecutors to refrain from "speculating as to what conversations might have occurred, and . . . presenting hypothetical conversations not fairly inferable from the evidence before the jury." *Commonwealth* v. *Coren*, *supra* at 732, quoting *Commonwealth* v. *Pope*, 406 Mass. 581, 587 (1990). We conclude, however, that this isolated remark, even if improper, was not of such import as to create a basis for a new trial. See *Commonwealth* v. *Freeman*, 430 Mass. 111, 119-120 (1999); *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1978), *S.C.*, 423 Mass. 17 (1996). The jury properly were instructed that they had to decide the case based on the evidence presented at

---

[3]The lack of any objection to the prosecutor's closing argument suggests that defense counsel did not view the remarks as particularly prejudicial when made. See *Commonwealth* v. *Good*, 409 Mass. 612, 624 (1991).

[4]The prosecutor was not required to accept that the reason for the defendant's initial lack of response was that his faulty English prevented him from understanding the thrust of the police officer's question.

trial and twice[5] were told that closing arguments were not evidence, but "opportunities for the attorneys to describe the evidence from the point of view that each represents." We have no doubt that the jury were capable of distinguishing between evidence and rhetoric in the closing arguments of the lawyers. See *Commonwealth* v. *Pike*, 430 Mass. 317, 327 (1999); *Commonwealth* v. *Masello*, 428 Mass. 446, 452-453 (1998); *Commonwealth* v. *Good*, 409 Mass. 612, 626 (1991). Their request, during the second day of deliberation, to view the police report[6] does not diminish our confidence that the "jury could not have been misled into thinking that [the prosecutor] was giving them a verbatim quote of [the defendant's] statement[]." *Commonwealth* v. *Brum*, 438 Mass. 103, 119 (2002), quoting *Commonwealth* v. *Rivera*, 52 Mass. App. Ct. 321, 326 (2001). The jury obviously believed the victim's testimony that the assaults took place.

3. The crux of this appeal is the defendant's claim that the judge lacked statutory authority to sentence him to community parole supervision for life, in the absence of a motion from the Commonwealth. The parole sentence was imposed in the following manner. After the return of the jury verdicts, the prosecutor recommended to the judge that the defendant be sentenced to two and one-half years in jail with six months to be served, the balance to be suspended for two years on the first count, three years' probation to be served consecutively on the second count, and that the defendant be ordered to register as a sex offender and to have no contact with the victim or her family. After a social service outreach worker with Massachusetts General Hospital spoke briefly on behalf of the defendant and his family (his wife and two children, one of whom was terminally ill), the prosecutor acknowledged to the judge that the defendant was needed at home and requested that he be given a suspended sentence "and whatever else the court finds is appropriate."

---

[5]The judge repeated the entire charge to the jury after the jury requested further clarification with respect to what could be considered in reaching their verdicts.

[6]The defendant concedes that the jury's request to view the police report, which was not in evidence, properly was denied.

The judge sentenced the defendant, on the first count, to two years in a house of correction, suspended for two years until November 28, 2003, and ordered the defendant to stay away from the victim and to register as a sex offender. The judge also ordered that the defendant be placed on community parole supervision for life, pursuant to G. L. c. 265, § 45. On count two, the judge sentenced the defendant to one year in a house of correction, suspended for two years until November 28, 2003. The judge entered findings, pursuant to G. L. c. 265, § 41,[7] that the defendant had no criminal record and that he was the sole support of his family, including a seriously ill child, to justify his decision not to sentence the defendant to a term of imprisonment. In order to clarify our discussion of the defendant's claim, we now briefly outline the background of the statutes under which a judge is authorized to impose the sentence of community parole supervision for life.

In 1999, the Legislature passed an emergency law, St. 1999, c. 74, formally entitled, "An Act improving the sex offender registry and establishing civil commitment and community parole supervision for life for sex offenders" (Act). Based on the premise that sex offenders generally pose a high risk of recidivism and, therefore, greatly threaten the safety of the community, see St. 1999, § 1, the Act sets forth three mechanisms to protect the public from sex offenders. First, the Act establishes a Statewide computerized sex offender registry, imposes a requirement that all individuals classified as sex offenders register therein, and sets forth procedures for the transmission of information in the registry to law enforcement authorities and for public dissemination of information with respect to those sex offenders who are determined to pose the greatest danger to the community. See G. L. c. 6, §§ 178C-178P, as appearing in St. 1999, c. 74, § 2. See also *Roe* v. *Attorney Gen.*, 434 Mass. 418, 423-442 (2001). Second, the Act reauthorizes the indefinite civil commitment of sexually danger-

---

[7]The provisions of G. L. c. 265, § 41, mandate that, in sentencing a defendant for a violation of a offense, the penalty for which includes imprisonment, a judge "who does not impose such sentence of imprisonment shall include in the record of the case specific reasons for not imposing a sentence of imprisonment."

ous persons under G. L. c. 123A, as amended through St. 1999, c. 74, §§ 3-8. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 494-497 (2000). Finally, the Act provides for lifetime parole ("community parole supervision for life") for certain sex offenders, in addition to any term of incarceration or probation imposed under the applicable criminal statutes. See G. L. c. 127, § 133D, inserted by St. 1999, c. 74, § 9; G. L. c. 265, § 45, inserted by St. 1999, c. 74, § 13; G. L. c. 275, § 18, inserted by St. 1999, c. 74, § 14.

The Legislature unquestionably intended "community parole supervision for life" to serve, beyond its formally recognized purpose of public protection, as an enhanced penalty for sex offenders. Section 9 of the Act provides that an offender serving a sentence of lifetime community parole is subject to the jurisdiction, supervision, and control of the parole board, exactly as if such person were a parolee. See G. L. c. 127, § 133D (*a*). The terms and conditions of parole are determined by the parole board and may be revised, altered, or amended at any time, and a defendant who violates a condition of parole is punished by commitment to a term of imprisonment in a house of correction. A lifetime parolee who has served the entire period of confinement under his or her original sentence, on a first violation, shall be sentenced to a term of thirty days; on a second violation, the term increases to 180 days; on a third or subsequent violation, the term increases to one year.[8] See G. L. c. 127, § 133D (*c*). After fifteen years, a lifetime parolee may petition the parole board to request a termination of his or her parole. See G. L. c. 127, § 133D (*b*). This case represents the first time that we have been asked to interpret that portion of the Act providing for the imposition of community parole supervision for life. We consider only those statutory provisions relevant to the defendant's challenge to the manner in which his parole sentence was imposed.

Section 13 of the Act, codified at G. L. c. 265, § 45, and set

---

[8]In all three of the above circumstances, if the violation of parole constitutes a criminal offense, the term of imprisonment imposed for the parole violation is in addition to whatever penalty is imposed for that offense. See G. L. c. 127, § 133D (*c*).

forth below in its entirety,[9] provides that first-time offenders who have committed certain sex offenses, including indecent assault and battery of a child under fourteen years, of a mentally retarded person, or of person who has attained age fourteen years, "may, in addition to the term of imprisonment authorized by [G. L. c. 265, §§ 13B, 13F, or 13H], be punished by a term of community parole supervision for life." On first-time offenders of more serious crimes, such as rape, assault with intent to rape, or kidnapping a child, § 45 states that a judge "shall" impose community parole supervision for life, subject to possible exceptions set forth in G. L. c. 275, § 18. For all offenders who previously have been convicted of a sex offense, § 45

[9]"Any person who commits indecent assault and battery on a child under 14 under [G. L. c. 265, § 13B], indecent assault and battery on a mentally retarded person under the first paragraph of [G. L. c. 265, § 13F] or indecent assault and battery on a person who has attained the age of 14 under [G. L. c. 265, § 13H] may, in addition to the term of imprisonment authorized by such section, be punished by a term of community parole supervision for life to be served under the jurisdiction of the parole board, as set forth in [G. L. c. 127, § 133C]. Any person who commits rape under [G. L. c. 265, § 22]; rape of a child under 16 with force under [G. L. c. 265, § 22A]; rape and abuse of a child under [G. L. c. 265, § 23]; assault with intent to commit rape under [G. L. c. 265, § 24]; assault of a child under 16 with intent to commit rape under [G. L. c. 265, § 24B]; kidnapping a child under the age of 16 under [G. L. c. 265, § 26]; drugging persons for sexual intercourse under [G. L. c. 272, § 3]; unnatural and lascivious acts with a child under 16 under [G. L. c. 272, § 35A]; or commits an attempt to violate any such section pursuant to [G. L. c. 274, § 6], shall, except as provided for in [G. L. c. 275, § 18], and in addition to the term of imprisonment authorized by such section, receive a sentence of community parole supervision for life to be served under the jurisdiction of the parole board, as set forth in [G. L. c. 127, § 133D]. Any person convicted of violating [G. L. c. 265, §§ 13B, 13F, 13H, 22, 22A, 23, 24, 24B, or 26] or of an attempt to violate any of such sections pursuant to [G. L. c. 274, § 6], after one or more prior convictions of indecent assault and battery, rape, assault with intent to commit rape, unnatural and lascivious acts, drugging for sex, kidnap or of any offense which is the same as or necessarily includes the same elements of said offense shall, in addition to the term of imprisonment authorized by such section, be punished by a term of community parole supervision for life, to be served under the jurisdiction of the parole board, as set forth in [G. L. c. 127, § 133D]. The sentence of community parole supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon such person by the court or upon such person's release from probation supervision or upon discharge from commitment to the treatment center pursuant to [G. L. c. 123A, § 9], whichever first occurs."

mandates that a judge "shall" order lifetime community parole supervision, and the statute sets forth no exceptions.

General Laws c. 265, § 45, is silent on the circumstances in which a judge "may" impose lifetime parole on first-time offenders convicted of indecent assault and battery of a person who has attained fourteen years, such as the defendant. Section 14 of the Act, however, codified at G. L. c. 275, § 18, states:

> "Whenever a person is convicted of a first offense under [G. L. c. 265, § 13H] . . . the district attorney, upon motion to the court, may request a hearing after conviction and before sentencing, to determine whether or not such person shall be committed, in addition to any term of imprisonment or probation authorized by said sections, to community parole supervision for life, to be served under the jurisdiction of the parole board as set forth in [G. L. c. 127, § 133D] . . . .

> "At such a hearing, the defendant shall have the right to be represented by counsel, and . . . shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing and to present information. . . . A finding by the court that such person shall be committed to community parole supervision for life shall be supported by clear and convincing evidence.

> "In making a determination the judge shall, on the basis of any information which he can reasonably obtain, consider any mitigating or aggravating circumstances including, but not limited to, the defendant's character, propensities, criminal record, the nature and seriousness of the danger posed to any person or the community and the nature and circumstances of the offense for which the defendant is convicted. If the judge finds, by clear and convincing evidence, that no reasons for community parole supervision for life to be served . . . exist, the judge shall not impose community supervision for life on such first offender."

Read together, the statutes provide that "[w]henever a person is convicted of a first offense under [G. L. c. 265, § 13H]," the

district attorney "may request a hearing after conviction and before sentencing." At such a hearing, "the defendant shall have the right to be represented by counsel [and] shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing and to present information." A judge then "may" impose community parole supervision for life, on findings that "shall be supported by clear and convincing evidence."[10] We conclude that, although G. L. c. 265, § 45, is silent on the scope of a judge's discretion to impose lifetime parole on a defendant convicted of a first offense under G. L. c. 265, § 13H, the provisions of G. L. c. 275, § 18, make crystal clear that such a sentence is triggered by the filing of a motion by the district attorney requesting a determination on the matter. It is only after a hearing, and the appropriate finding or findings, that a judge "may" impose lifetime parole, and then the judge's decision must be supported by "clear and convincing evidence."

The Commonwealth maintains that G. L. c. 265, § 45, may be read alone to authorize a judge to impose lifetime community parole supervision for life, sua sponte, regardless of what additional procedural requirements are set forth in G. L. c. 275, § 18. According to the Commonwealth, G. L. c. 265, § 45, and G. L. c. 275, § 18, represent an either-or situation — either allowing the district attorney to file a motion pursuant to G. L. c. 275, § 18, in which case a defendant is entitled to an evidentiary hearing on the matter and may not be sentenced to lifetime parole without a finding or findings supported by "clear and convincing evidence," or allowing a judge discretion to impose the sentence, sua sponte, under G. L. c. 265, § 45, in which case the defendant is entitled to neither a hearing nor the requisite findings. We disagree.

The statutes were enacted together in 1999 as part of a carefully-crafted statutory plan to protect the public from sexually dangerous persons and, according to established principles of statutory construction, must be "construed together so as to constitute a harmonious whole consistent with the legislative

---

[10]We note, but need not address, the ambiguity inherent in the concurrent requirement of G. L. c. 275, § 18, that a determination by the judge that lifetime parole should not be imposed also be supported by "clear and convincing evidence."

purpose." *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513-514 (1975). We have no doubt that the Legislature intended the two statutes to work together as a "harmonious whole," allowing judges to commit first-time offenders of certain sex offenses to parole supervision for life, but only when requested by the district attorney, and only after further procedural protections, set forth in G. L. c. 275, § 18, have been afforded the defendant.

Conclusive support for our position is found in language of G. L. c. 265, § 45, with respect to first-time offenders of crimes such as rape, assault with intent to rape, kidnapping a child, drugging persons for sexual intercourse, or unnatural and lascivious acts with a child under sixteen years of age. Section 45 states that, in such cases, a judge "shall" impose community parole supervision for life on such offenders, "except as provided for in" G. L. c. 275, § 18.[11] Section 18 of G. L. c. 275, in turn, expressly provides that such offenders, "upon motion to the court, may request a hearing after conviction and before sentencing to determine whether or not such person shall receive, in addition to a term of imprisonment or probation authorized by [the appropriate criminal statute], community parole supervision for life." Moreover, § 18 states:

> "Whenever a person is convicted of a first offense under [G. L. c. 265, §§ 22, 22A, 23, 24, 24B, or 26], or [G. L. c. 272, §§ 3 or 35A] or for a first attempt of any of the aforementioned crimes under [G. L. c. 274, § 6], the district attorney may file a motion with the sentencing judge requesting that the defendant not receive community parole supervision for life, and upon receipt of such motion, the sentencing judge shall not impose community parole supervision for life on such first offender."

The express language of G. L. c. 275, § 18, therefore, grants all first-time offenders convicted of serious sexual offenses, including rape and assault with intent to commit rape, the right to an evidentiary hearing (with its full panoply of procedural

---

[11]It is only persons convicted of a sex offense who have previously been convicted of one or more sex offenses for whom the Legislature intended lifetime community parole supervision to be a mandatory sentence. See G. L. c. 265, § 45.

safeguards) before being sentenced to community parole supervision for life, and, moreover, vests the district attorney with authority to veto the imposition of lifetime parole in those cases. We reject any interpretation of the statutory scheme providing for community lifetime parole that would permit the sentence to be imposed on first-time offenders convicted of what could only be considered as less serious offenses at the absolute discretion of the judge, with no motion or evidentiary hearing, and even in circumstances when the district attorney opposes its imposition. See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 438 Mass. 187, 194 (2002) ("We interpret statutes as a whole to produce internal consistency"). There is no indication that the Legislature intended such an anomalous sentencing scheme. See *Commonwealth* v. *Dale D.*, 431 Mass. 757, 760-761 (2000) ("We construe statutes in accordance with the Legislature's intent and in order to effectuate the purpose of their framers").[12]

We have little difficulty in concluding that the procedure set forth in G. L. c. 275, § 18, was not followed in this case. The prosecutor made no motion requesting a hearing on whether the sentence was warranted,[13] the defendant was afforded no opportunity to present evidence and to be heard on the matter, and the judge made no findings whatsoever as to why this defendant should be committed to lifetime community parole supervision. A judge is "permitted great latitude in sentencing [but] the sentence imposed [must be] within the limits provided by the statute under which the defendant is convicted." *Commonwealth* v. *McIntyre*, 436 Mass. 829, 833 (2002), quoting *Commonwealth* v. *Power*, 420 Mass. 410, 413-414 (1995), cert. denied, 516 U.S. 1042 (1996). Because the judge had no statutory authority to impose the sentence in the manner in which he did, the sentence was contrary to law.

---

[12]We reject the Commonwealth's suggestion that the judge had "inherent" authority to impose the sentence, beyond the limits of his statutory authority. See *Sheriff of Middlesex County* v. *Commissioner of Correction*, 383 Mass. 631, 635-636 (1981).

[13]A recommendation to the judge to sentence the defendant to "whatever else the court finds is appropriate," of course, cannot be characterized as a motion that the judge impose lifetime community parole supervision. No one argues otherwise.

4. We reject the defendant's request that we vacate only that portion of his sentence that was unlawful, that is, only the sentence to lifetime community parole supervision. The judge's belief that lifetime community parole supervision could be imposed influenced his decision as to the appropriate punishment for the defendant's two convictions. The sentences imposed constituted an integrated package, each piece dependent on the other, which cannot be separated. Because the judge misunderstood the bounds of his statutory authority, the defendant must be sentenced again. See *Commonwealth* v. *White*, 436 Mass. 340, 345 (2002).

At resentencing, the judge may consider any information concerning the defendant's conduct, good and bad, during the intervening time. See *id.* at 343-344. Should the resentencing judge impose a punishment harsher than what the defendant originally received, his reasons for doing so must appear on the record and be based on information not before the first sentencing judge. See *Commonwealth* v. *Hyatt*, 419 Mass. 815, 823 (1995).[14] If the district attorney chooses to file a motion pursuant to G. L. c. 275, § 18, the defendant, with the help of counsel, may prepare a defense to the motion. The resentencing judge then must proceed as set forth in G. L. c. 275, § 18, in accordance with what has been discussed in this opinion, before community parole supervision for life may be imposed on the defendant.

5. We affirm the defendant's judgments of conviction, vacate his sentences, and remand the case to the District Court for resentencing in accordance with this opinion.

*So ordered.*

---

[14]We note that the concurrent terms of probation that the defendant has been serving since the time of his original sentencing are due to expire soon.