ALFRED J. COFFIN *vs.* SUPERINTENDENT, MASSACHUSETTS
TREATMENT CENTER, & another.[1]

Suffolk. September 7, 2010. - November 4, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Sex Offender. Statute,* Construction. *Practice, Criminal,* Sentence. *Constitutional Law,* Sentence. *Words,* "Prisoner."

This court concluded that the plaintiff was not a "prisoner" within the meaning of G. L. c. 123A, § 12 (*b*), for purposes of initiating civil commitment proceedings against him as a sexually dangerous person, where the plaintiff was incarcerated pursuant to a facially unconstitutional statute. [188-191] CORDY, J., dissenting, with whom IRELAND and GANTS, JJ., joined.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 27, 2009.

The case was reported by *Cordy,* J.

*Ryan M. Schiff,* Committee for Public Counsel Services (*Beth L. Eisenberg,* Committee for Public Counsel Services, & *Lorenzo Perez* with him) for the plaintiff.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for District Attorney for the Middle District.

*Martha Coakley,* Attorney General, & *Argie K. Shapiro & Pamela L. Hunt,* Assistant Attorneys General, for the Attorney General, amicus curiae, submitted a brief.

COWIN, J. General Laws c. 123A, § 12 (*b*) (§ 12 [*b*]), permits the Commonwealth to file a petition to commit a person as a "sexually dangerous person" (SDP) only if the person is a "prisoner or youth in the custody of the department of youth services." This case requires that we decide whether, for purposes of § 12 (*b*), a person placed in custody pursuant to an unconstitutional statute is nevertheless a "prisoner" within the meaning of the statute. At the time the Commonwealth filed its petition for

---

[1]District Attorney for the Middle District.

commitment of the plaintiff as an SDP, he was incarcerated solely for violating the conditions of lifetime community parole imposed pursuant to a statute, G. L. c. 275, § 18, that we have declared to be facially unconstitutional. See *Commonwealth* v. *Pagan*, 445 Mass. 161, 170-174 (2005). The Commonwealth seeks to rely on this incarceration as the basis for deeming him a "prisoner" under § 12 (*b*), and to commit him indefinitely as an SDP. We conclude that under § 12 (*b*), as properly construed, an individual incarcerated for violating the terms of an unconstitutional sentence is not a "prisoner" subject to civil commitment as an SDP.[2]

1. *Background and prior proceedings.* The essential facts are undisputed. In 2001, the plaintiff was charged with one count of indecent assault and battery on a person over fourteen, G. L. c. 265, § 13H. He pleaded guilty in the District Court and was sentenced to one year in the house of correction, followed by community parole supervision for life (lifetime parole) pursuant to G. L. c. 265, § 45, and G. L. c. 275, § 18.[3] After his release from the house of correction, he was found to have violated the terms of his parole three times; each violation resulted in a period of incarceration. The plaintiff then pleaded guilty in the District Court to breaking and entering and was sentenced to three months in the house of correction. After his release from that sentence, he was found in violation of his parole for the fourth time, and in October, 2005, he was returned to the house of correction and ordered to serve one year for the parole violation.[4]

On September 14, 2005, we decided *Commonwealth* v. *Pagan*, *supra*, determining that the sentencing procedures for imposing lifetime parole under G. L. c. 275, § 18, were unconstitutionally vague. Accordingly, during the time he was in custody for his

---

[2] We acknowledge the amicus brief of the Attorney General.

[3] General Laws c. 265, § 45, provides that any person who "commits . . . indecent assault and battery on a person who has attained the age of 14 under section 13H may, in addition to the term of imprisonment authorized by such section, be punished by a term of community parole supervision for life." General Laws c. 275, § 18, provided at that time that, for any person "convicted of a first offense under section . . . 13H of chapter 265," the district attorney could request a hearing "to determine whether or not such person shall be committed . . . to community parole supervision for life."

[4] The violation was for failing to provide an address where the parole board could install a telephonic landline connection for a global positioning system.

fourth parole violation, the plaintiff filed a motion to vacate his lifetime parole sentence. The District Attorney conceded that lifetime parole was unconstitutional as applied to the plaintiff, and assented to the motion on February 24, 2006. The motion was allowed by agreement, and the sentence vacated, on March 8, 2006. However, on March 1, 2006, while the plaintiff was still in custody, and before the motion to vacate the lifetime parole sentence was heard in the District Court, the District Attorney filed a petition in the Superior Court under § 12 (*b*) to adjudicate the plaintiff as an SDP. On that day, he was temporarily committed to the Nemansket Correctional Center, and has remained committed pending trial on the SDP petition.[5]

The plaintiff filed a petition for extraordinary relief in the county court pursuant to G. L. c. 211, § 3.[6] He alleged that he was illegally held on March 1, 2006, under an unconstitutional lifetime parole sentence, and therefore, at the time the Commonwealth filed its petition to adjudicate him as an SDP, he was not a "prisoner" within the meaning of § 12 (*b*). A single justice reserved and reported the issue to the full court.

2. *Discussion.* Section 12 (*b*) permits the Commonwealth to file a petition for civil commitment as an SDP only for a "pris-

---

[5]General Laws c. 123A, §§ 12 (*e*) and 14 (*e*), permit a court to "temporarily commit [a] person to the treatment center pending disposition of the petition."

[6]The Commonwealth argues that, because the plaintiff "has or had several alternative avenues" for relief, we should not grant relief under G. L. c. 211, § 3. A person seeking discretionary review under G. L. c. 211, § 3, "must demonstrate both a substantial claim of violation of his substantive rights and error that cannot be remedied under the ordinary review process." *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986). The plaintiff's claim for relief meets this test. He claims his commitment under G. L. c. 123A, § 12 (*b*) (§ 12 [*b*]), deprives him of his substantive "right to be free from unjustified governmental intrusion on physical liberty." *Aime* v. *Commonwealth*, 414 Mass. 667, 677 (1993). Although other appellate procedures are available to the plaintiff, he asserts a denial of immediate liberty that the normal appellate process cannot effectively remedy. See *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Hous. Court Dep't*, 448 Mass. 57, 61 (2006); *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 707-708 (1990). General Laws c. 211, § 3, is an appropriate avenue by which the plaintiff may seek relief.

The plaintiff also sought a writ of habeas corpus under G. L. c. 248, § 1, and declaratory and injunctive relief under G. L. c. 231A, § 1. Because we resolve his claims pursuant to his petition under G. L. c. 211, § 3, we do not address his claims under G. L. c. 248, § 1, or G. L. c. 231A, § 1.

oner or youth in the custody of the department of youth services." Because G. L. c. 123A is "a statute in derogation of liberty," we begin by emphasizing that the statute must be interpreted narrowly. See *Commonwealth* v. *Gillis*, 448 Mass. 354, 364 (2007). Given the due process concerns associated with civil commitment, we will not subject a class of persons to the SDP statute "without a clear statement of legislative intent to do so." *Id.* at 357. Moreover, in interpreting the statute's language, we will "indulge every rational presumption" to avoid concerns regarding the statute's constitutionality. *Commonwealth* v. *Lammi*, 386 Mass. 299, 301 (1982).

In determining eligibility for civil commitment, the fact of custody alone is not determinative. See *Commonwealth* v. *Allen*, 73 Mass. App. Ct. 862, 864 (2009). Nor is it enough that an individual is serving a sentence. Because G. L. c. 123A authorizes substantial and indefinite deprivations of liberty, we construe § 12 (*b*) to mean that an individual is a "prisoner" for purposes of the statute only if he is serving a sentence imposed under a statute that is constitutionally sound. We do not interpret the Legislature's use of the term "prisoner" in § 12 (*b*) as intended to encompass a person who is held in custody solely pursuant to a statute that itself is facially unconstitutional. We reject the proposition that the Legislature meant § 12 (*b*), which is itself a forceful assertion of State authority, to be triggered by a custodial arrangement that should not have been imposed in the first place, and cannot be imposed on anyone in the future. Accordingly, we conclude that a person incarcerated under a facially unconstitutional statute is not a "prisoner" for purposes of the threshold requirement for civil commitment as an SDP under § 12 (*b*), and that the statute does not authorize the Commonwealth to initiate SDP proceedings against him.

The Commonwealth argues that until the plaintiff's sentence was vacated by a judge on March 8, 2006, he was still in custody and still serving a sentence. Accordingly, the Commonwealth posits that, when it filed the SDP petition one week earlier, the plaintiff was still a "prisoner" under § 12 (*b*). We do not agree. Although the plaintiff was lawfully in custody at that time and thus was a prisoner in a physical sense, the fact of custody by itself is not dispositive. The question is whether the plaintiff

was a prisoner for purposes of § 12 (*b*), and in making that determination, the constitutional invalidity of his sentence cannot be ignored. Because G. L. c. 275, § 18, had been determined to be facially unconstitutional, it was undisputed that the plaintiff's sentence was not valid at the time of the Commonwealth's filing.[7] The plaintiff was being held in custody only until he could appear before a judge to have his unconstitutional sentence vacated in light of *Commonwealth* v. *Pagan, supra.* Therefore, he was not a "prisoner" under § 12 (*b*), and the Commonwealth lacked the necessary custodial prerequisite to file a petition under that statute.[8]

The Commonwealth contends that, by concluding that persons serving constitutionally invalid sentences cannot be committed under G. L. c. 123A, the same reasoning may render them immune from other statutes that punish "prisoners." See, e.g., G. L. c. 268, § 16 (escape); G. L. c. 266, § 130 (injury to public property). In effect, the Commonwealth contends that a person who is not a "prisoner" under § 12 (*b*) cannot be a "prisoner" as that term is used in other statutes. This argument is without merit. The laws cited by the Commonwealth address unlawful acts by individuals in custody. The Legislature can logically punish dangerous and disorderly behavior by incarcerated persons in order to discourage such activities and to facilitate the operation of the penal system. The issue whether an individual's sentence is constitutionally valid is not material when the individual is the unlawful actor. Our decision today has no effect on how "prisoner" is properly defined in other statutes that penalize unlawful acts by individuals.

In the dissent's view, lawful confinement is all that § 12 (*b*)

---

[7]When the Commonwealth filed its SDP petition, it had been on notice for more than five months that the plaintiff's sentence of community parole supervision for life was unconstitutional; indeed, the Commonwealth had conceded the constitutional invalidity of the plaintiff's sentence several days prior to filing the petition.

[8]Because we conclude a person in custody pursuant to an unconstitutional sentence is not a "prisoner" within the language of § 12 (*b*), we do not reach the due process concerns that might arise if an unconstitutional sentence could serve as the basis for further confinement by the State. Nor need we consider whether the plaintiff's sentence was void ab initio or merely voidable. See *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U.S. 371, 374 (1940). See also *Robinson* v. *Neil,* 409 U.S. 505, 507-508 (1973).

requires. The dissent considers dispositive the fact that on March 1, 2006, the plaintiff was in custody and his sentence was still in effect. That argument misses the point. We agree that as of March 1, 2006, the plaintiff was in custody and had not yet been resentenced. The issue here, however, does not concern the lawfulness of the plaintiff's confinement as of that date but whether the plaintiff was a "prisoner" for purposes of § 12 (*b*). More is required than lawful confinement, in light of the purpose and effect of the SDP statute. Under G. L. c. 123A, persons who have served their sentences are subjected to additional proceedings that, though nominally civil, may result in commitment for the duration of one's natural life. See G. L. c. 123A, § 14 (*d*). The dissent would require nothing more than the appearance of lawfulness in the underlying sentence when the SDP process begins. We cannot interpret so loosely the class that the Legislature intended § 12 (*b*) to cover.

3. *Conclusion.* The case is remanded to the Superior Court for entry of an order dismissing the Commonwealth's petition pursuant to G. L. c. 123A, § 12 (*b*).

*So ordered.*

CORDY, J. (dissenting, with whom Ireland and Gants, JJ., join). When the Commonwealth filed its petition to commit Coffin as a sexually dangerous person on March 1, 2006, he was in custody under criminal sentence imposed by a court with jurisdiction to do so. Neither our decision in *Commonwealth* v. *Pagan*, 445 Mass. 161 (2005), to which Coffin was not a party, nor the filing of his motion to "correct" his sentence voided or terminated his then lawful confinement.[1] See *Lynch, petitioner*, 379 Mass. 757, 760 (1980) (where defendant serving sentence resulting from unconstitutional revocation of parole, commitment "was voidable for error and not void, and, therefore, was

---

[1]Although the Commonwealth had indicated its assent to Coffin's motion to correct his sentence prior to filing the G. L. c. 123A petition, it had neither assented to his release from custody nor agreed to any specific resentencing recommendation. Indeed, much of the argument at the resentencing hearing on March 8, 2006, was about what additional period of incarceration the Commonwealth would seek, and how Coffin's prior incarceration should be taken into account in such a circumstance.

valid until reversed through the legal process"); *Lewis* v. *Commonwealth*, 329 Mass. 445, 448 (1952) (where court had jurisdiction over crime and defendant, sentence that was product of unlawful conviction may be "erroneous and voidable for error but was not void until reversed"). See also *DuPont* v. *Commissioner of Correction*, 59 Mass. App. Ct. 908, 910-911 (2003), cert. denied, 542 U.S. 943 (2004), citing *Lynch, petitioner, supra* ("when a person is confined in accordance with a duly imposed sentence, that confinement is lawful until the conviction or the sentencing process that led to it is reversed through the legal process").

Moreover, the remedy for the inappropriate imposition of community parole supervision for life is not vacation of the unlawful portion of the sentence in question, but a resentencing at which the "judge may consider any information concerning the defendant's conduct, good and bad, during the intervening time." *Commonwealth* v. *Renderos*, 440 Mass. 422, 435 (2003).[2] Consequently, Coffin remained a "prisoner" within the meaning of G. L. c. 123A, § 12 (*b*), through the time of his resentencing on March 8, 2006.[3] Indeed, if at that resentencing hearing he had been sentenced to serve additional prison time on the underlying offense of indecent assault and battery, which plainly could have occurred, his status as a prisoner would have continued in effect.[4] *Commonwealth* v. *Gillis*, 448 Mass. 354 (2007), is not to the contrary. In that case, we held that a person who was civilly committed pursuant to G. L. c. 123, §§ 7 and 8, after the expiration of his or her criminal sentence was not a "prisoner"

[2] What we underscored in *Commonwealth* v. *Renderos*, 440 Mass. 422, 435 (2003), with respect to the need for resentencing is equally applicable here, that is, that the "sentences imposed constituted an integrated package," and the "belief that lifetime community parole supervision could be imposed influenced [the] decision as to the appropriate punishment."

[3] A defendant's status as a prisoner at the time a petition for civil commitment is filed is a statutory prerequisite to its filing, not an element of sexual dangerousness that must be proved beyond a reasonable doubt at trial. See G. L. c. 123A, § 14. The elements include a prior conviction of a sexual offense. The validity of Coffin's prior conviction of a sexual offense is not in dispute in this case.

[4] This is not a case where the conviction underlying the imprisonment has been reversed and the defendant exonerated. Such circumstances might warrant a different outcome. Here, however, the only remedy for the error was resentencing, not an acquittal or even a new trial where an acquittal might occur.

for purposes of G. L. c. 123, § 12 (*a*). *Id.* at 363. Similarly, in *Commonwealth* v. *Allen*, 73 Mass. App. Ct. 862, 864 (2009), the Appeals Court held that a defendant whose sentence had expired (but who had not yet been properly released because of a clerical error) was not a prisoner for purposes of G. L. c. 123A. In stark contrast to the circumstances presented in those cases, here Coffin's criminal sentence had not expired as of March 1, 2006, and was still lawfully in effect when the Commonwealth filed its petition. In my view, that is sufficient.[5] Therefore, I respectfully dissent.

---

[5]Other State courts that have addressed the prerequisite of imprisonment in the context of interpreting their respective sexually dangerous person statutes (statutes not identical in their wording) have reached differing conclusions. Appellate courts in Washington and California have concluded that in the absence of intentional wrongdoing or bad faith in the underlying imprisonment, the lawfulness or unlawfulness of that imprisonment does not remove jurisdiction from the committing court or preclude the commitment of the person detained as a sexually dangerous person. See *In re Detention of Scott*, 150 Wash. App. 414, 422-423 (2009); *In re Detention of Keeney*, 141 Wash. App. 318, 329-330 (2007). See also *In re Smith*, 42 Cal. 4th 1251, 1269-1270 (2008); *People* v. *Wakefield*, 81 Cal. App. 4th 893, 897-899 (2000). The Florida Supreme Court has interpreted its statute otherwise. See *Larimore* v. *State*, 2 So. 3d 101, 114 (Fla. 2008).