NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-411                                       Appeals Court

COMMONWEALTH  vs.  RONALD A. BALLARD.

No. 17-P-411.

Worcester.     December 8, 2017. - February 2, 2018.

Present:  Sacks, Ditkoff, & Singh, JJ.

Sex Offender.  Practice, Civil, Sex offender.  Practice,
    Criminal, Plea.  Statute, Construction.  Words, "Prisoner."

Civil action commenced in the Superior Court Department on
February 4, 2014.

A motion to dismiss was heard by Daniel M. Wrenn, J.

Ellyn H. Lazar-Moore, Assistant District Attorney, for the
Commonwealth.
John S. Day for the defendant.

SACKS, J.  The Commonwealth appeals from a judgment

dismissing its petition to commit the defendant as a sexually

dangerous person (SDP) pursuant to G. L. c. 123A, § 12.  On the

date the petition was filed, the defendant was serving a

criminal sentence; some two and one-half years later, the

defendant was allowed to withdraw the guilty pleas to the

offenses for which he had been sentenced.  This led a Superior Court judge to rule, based on his interpretation of Coffin v. Superintendent, Mass. Treatment Center, 458 Mass. 186 (2010), that the defendant was not a prisoner under G. L. c. 123A, § 12(b), at the time the petition was filed, and thus was not subject to being committed as an SDP.  Concluding that the judge applied Coffin too broadly, we reverse.

Background.  In the 1980s, the defendant was convicted of a number of sexual offenses against women in both the Commonwealth and California.  He received State prison sentences in both jurisdictions, completing his sentence in the Commonwealth in 2003, at which time the Commonwealth successfully petitioned to commit him to the Massachusetts Treatment Center (treatment center) as an SDP.  Following a trial in which the defendant was found no longer sexually dangerous, he was discharged in 2007.

In 2013, based on an incident in which the defendant approached a seventeen year old female working at a farm stand, criminal complaints issued from the District Court charging him with accosting or annoying a person of the opposite sex in violation of G. L. c. 272, § 53,[1] threatening to commit a crime in violation of G. L. c. 275, § 2, and intimidation of a witness

---

[1] In 2014, G. L. c. 272, § 53, was amended to substitute "another person" for "persons of the opposite sex."  St. 2014, c. 417.

in violation of G. L. c. 268, § 13B.  In January, 2014, the defendant pleaded guilty to the charges and was sentenced to concurrent sentences amounting to nine months in the house of correction, with credit for time served.[2]

In February, 2014, while the defendant was serving his sentences, the Commonwealth petitioned in Superior Court to have him civilly committed as an SDP.  In April, 2014, a different judge found probable cause to believe the defendant was an SDP and committed him to the treatment center for examination and diagnosis by two qualified examiners.  Based on their reports, the Commonwealth moved for a jury trial; after that motion was allowed, the defendant obtained funds to retain his own experts for the purposes of trial.

In January, 2015, while trial preparations were ongoing and the defendant remained at the treatment center, he filed a motion in the District Court to withdraw his guilty pleas and for a new trial, asserting that the plea colloquy was defective by reason of the prosecutor's failure to state sufficient facts

---

[2] More specifically, the defendant received a nine-month sentence on the witness intimidation charge with 159 days of credit for time served; a six-month concurrent sentence on the threatening charge; and a three-month sentence on the accosting or annoying charge, from and after the sentence for threatening and concurrent with the sentence for witness intimidation.

to establish the elements of each offense.[3]  That motion was denied.  The defendant appealed and in August, 2016, in a memorandum and order issued pursuant to our rule 1:28, a panel of this court reversed, holding that the prosecutor's statement was inadequate to establish that a sufficient factual basis existed for any of the charges, thus resulting in constitutional error.  Commonwealth v. Ballard, 90 Mass. App. Ct. 1102 (2016).  The panel directed the entry of an order allowing the motion to withdraw the guilty pleas and for a new trial.

In September, 2016, the defendant moved in Superior Court to dismiss the Commonwealth's petition to commit him as an SDP.  He argued that the result of the 2016 order allowing him to withdraw his guilty pleas was that, at the time the petition was filed in 2014, he had been serving a "constitutionally unlawful sentence."  He asserted that therefore he was not a prisoner under G. L. c. 123A, § 12(b), as interpreted in Coffin, 458 Mass. at 187, and so could not be subject to civil commitment as an SDP.  The Superior Court judge agreed, dismissed the

---

[3] The defendant moved for a stay of the SDP proceedings pending a ruling on his motion to withdraw his pleas and for a new trial.  In allowing the motion for a stay, the judge in the SDP proceedings had the following notation added to the docket: "Defendant stated under oath, he was in agreement with the request, that he understood it may result in him being held in custody for a longer time and he has ample time to confer with counsel.  Defendant will remain in custody."

petition, and ordered the defendant discharged from the treatment center.  The Commonwealth appealed.[4]

Discussion.  Under § 12(b), the Commonwealth may "file a petition for civil commitment as an SDP only for a 'prisoner or youth in the custody of the department of youth services.' Because G. L. c. 123A is 'a statute in derogation of liberty,' . . . the statute must be interpreted narrowly." Coffin, 458 Mass. at 188-189, quoting from Commonwealth v. Gillis, 448 Mass. 354, 364 (2006).[5]  "[T]he fact of custody alone is not determinative." Coffin, supra at 189, citing Commonwealth v. Allen, 73 Mass. App. Ct. 862, 864 (2009).  Thus, where the Commonwealth petitioned to commit a person at a time when he was being held in prison beyond the end of his sentence, due solely to a clerical error in sentence calculation, the person was not

---

[4] The judge denied the Commonwealth's motion to stay execution of the order releasing the defendant.

[5] The statute further requires that the person be someone:

"[1] who has ever been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense as defined in section 1 [of G. L. c. 123A], regardless of the reason for the current incarceration, confinement or commitment, or [2] who has been charged with such offense but has been found incompetent to stand trial, or [3] who has been charged with any offense, is currently incompetent to stand trial and has previously been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense."

G. L. c. 123A, § 12(a), as amended by St. 2004, c. 66, §§ 7-9.

"serving a sentence," was not a "prisoner," and thus was not subject to commitment under the statute.[6]  Allen, supra.

In Coffin, the Supreme Judicial Court confronted the question "whether, for purposes of § 12(b), a person placed in custody pursuant to an unconstitutional statute is nevertheless a 'prisoner.'"  458 Mass. at 186.  The Coffin case arose in the wake of the decision in Commonwealth v. Pagan, 445 Mass. 161, 170-174 (2005), declaring the lifetime community parole statute, G. L. c. 275, § 18, "facially unconstitutional" as applied to first-time offenders.[7]  Coffin, supra at 187.  Shortly after Pagan was decided, Coffin was found in violation of his lifetime community parole conditions and ordered to serve one year for the violation.  Ibid.  While in custody for that violation, Coffin moved under Pagan to vacate his lifetime community parole sentence as unconstitutional; the Commonwealth conceded that his sentence was unconstitutional and assented to the motion.  Id. at 188.  Nevertheless, before the motion was heard and allowed, and while Coffin was still in custody, the Commonwealth

---

[6] Indeed, in Allen, the Commonwealth had filed its petition "the day after the defendant's motion to correct the sentence had been allowed, and almost three weeks after his sentence had ended."  73 Mass. App. Ct. at 863.

[7] Later, the Supreme Judicial Court found the lifetime community parole statute unconstitutional as applied to repeat offenders as well.  Commonwealth v. Cole, 468 Mass. 294 (2014).

petitioned under § 12(b) to adjudicate him an SDP, whereupon he was committed pending trial on the petition. Coffin, supra.

On Coffin's request for relief under G. L. c. 211, § 3, the Supreme Judicial Court held that the Legislature could not have intended "the term 'prisoner' in § 12(b) . . . to encompass a person who is held in custody solely pursuant to a statute that itself is facially unconstitutional." 458 Mass. at 189. The court continued, "We reject the proposition that the Legislature meant § 12(b), which is itself a forceful assertion of State authority, to be triggered by a custodial arrangement that should not have been imposed in the first place, and cannot be imposed on anyone in the future." Coffin, supra. Accordingly, the court "construe[d] § 12(b) to mean that an individual is a 'prisoner' for purposes of the statute only if he is serving a sentence imposed under a statute that is constitutionally sound." Coffin, supra. Coffin was not such an individual, and thus he was not subject to commitment as an SDP. Ibid. Indeed, "it was undisputed that [Coffin's] sentence was not valid at the time of the Commonwealth's filing. . . . [He] was being held in custody only until he could appear before a judge to have his unconstitutional sentence vacated in light of Commonwealth v. Pagan." Coffin, supra at 190.

The case now before us is quite different from Coffin. First and most important, none of the statutes under which the

defendant here was charged and sentenced has been declared unconstitutional, either facially or as applied to him.  The petition for the defendant's commitment thus satisfies Coffin's requirement that a person is a "prisoner" for § 12(b) purposes "only if he is serving a sentence imposed under a statute that is constitutionally sound."  458 Mass. at 189.

Second, at the time the Commonwealth petitioned to commit this defendant as an SDP, he was serving sentences pursuant to guilty pleas that were presumptively valid at the time of the petition and remained undisturbed for two and one-half years thereafter.  The pleas were accepted and the defendant was sentenced in January, 2014; the petition to commit him was filed in February, 2014; only later, in August, 2016, were the guilty pleas ruled invalid.  Compare Coffin, 458 Mass. at 188 (even before filing of SDP petition, Commonwealth had conceded constitutional invalidity of individual's sentence); Allen, 73 Mass. App. Ct. at 863 (even before filing of SDP petition, court had ruled that defendant's sentence had terminated nearly three weeks earlier).

Third, where the fundamental question is one of legislative intent, and in light of the principle that G. L. c. 123A, as a statute in derogation of liberty, must be narrowly construed, see Coffin, 458 Mass. at 189, it is reasonable to assume that the Legislature never envisioned G. L. c. 123A being used in

conjunction with another, facially unconstitutional statute to impose civil commitments. "There is every presumption that the legislative department of government always intends to act strictly within the bounds of the Constitution." Commonwealth v. Welosky, 276 Mass. 398, 406 (1931).

At the same time, however, the Legislature must also be presumed to be aware that convictions are occasionally invalidated, sometimes many years after the fact, based on a wide variety of constitutional or nonconstitutional errors in individual trials, or where it otherwise "appears that justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). While such nonsystemic errors and possible injustices are regrettable, and it is our duty to correct them, there is no indication in G. L. c. 123A that the Legislature intended judicial decisions vacating convictions on these grounds to go farther, to retroactively invalidate § 12(b) petitions that were based on the resulting, presumptively valid sentences of incarceration. Unlike the judge here, we do not read Coffin to require such a result.[8]

---

[8] The judge relied on the statement in Coffin that the Legislature did not intend § 12(b) "to be triggered by a custodial arrangement that should not have been imposed in the first place . . . ." 458 Mass. at 189. If that were an absolute, then a conviction later invalidated on any ground whatsoever would result in the invalidation of any resulting sentence of imprisonment and of any SDP petition or commitment predicated on that imprisonment. The judge may have overlooked

That § 12(b) must be construed narrowly does not mean it must be read to exclude as many incarcerated persons as possible; that would be inconsistent with the acknowledged public safety goals of G. L. c. 123A. "The SDP statute seeks to balance the dual concerns of protecting the public from sexually dangerous persons and preserving individual liberty." Gillis, 448 Mass. at 356, citing Commonwealth v. Parra, 445 Mass. 262, 264 (2005), and Commonwealth v. Knapp, 441 Mass. 157, 160 (2004). This public safety interest "is both legitimate and compelling." Commonwealth v. Bruno, 432 Mass. 489, 504 (2000). That the Legislature did not intend the narrowest possible construction is evident from its response to Commonwealth v. McLeod, 437 Mass. 286 (2002). After the McLeod court construed the SDP statute then in effect as not authorizing commitment of persons previously convicted of sexual offenses if their current incarcerations were for nonsexual offenses, id. at 292-294, and concluded that "any broadening of the statute would be the province of the Legislature," id. at 294, the Legislature amended the statute to apply to the class of persons the court

the remaining language in the quoted sentence from Coffin: § 12(b) was not meant "to be triggered by a custodial arrangement that should not have been imposed in the first place, and cannot be imposed on anyone in the future." Coffin, supra (emphasis supplied). The decisive factor in Coffin was the facial invalidation of the statute under which Coffin was a prisoner, not that Coffin himself should never have been imprisoned.

had held excluded.  See G. L. c. 123A, § 12(a), as amended by St. 2004, c. 66, §§ 7-9.  See Gillis, supra at 361-362.

We must construe the term "'prisoner[]' in the ordinary sense of the word," and "[t]he key operative fact of the statute is that SDP commitment is only available if the procedure is initiated before the termination of a period of criminal confinement."  Id. at 359.  The defendant here was a prisoner in the ordinary sense, and the procedure to commit him was initiated before the termination of his criminal confinement. That the guilty pleas underlying his sentences were vacated based not on the constitutional invalidation of any statute but instead on circumstances particular to his case, and were vacated several years after the fact -- indeed, well after the expiration of those sentences -- did not retroactively render the defendant something other than a prisoner at the time the § 12(b) petition was filed.

Our conclusion draws further support from McIntire, petitioner, 458 Mass. 257 (2010), decided one day after Coffin. In McIntire, an adjudicated SDP had petitioned for release under G. L. c. 123A, § 9, but in 2002 a jury found that he remained an SDP.  458 Mass. at 258, 259.  He appealed from the resulting judgment; before that appeal was decided in 2010, he filed three more petitions for release, which resulted in judgments in 2005, 2008, and 2010 that he remained an SDP.  Id. at 263.  Later in

2010, he prevailed on his appeal from the 2002 judgment on the ground that both qualified examiners who testified at trial had opined that he was no longer sexually dangerous, leaving insufficient evidence for the jury to find otherwise.  Id. at 262, citing Johnstone, petitioner, 453 Mass. 544, 546, 553 (2009).  McIntire argued that the reversal of the 2002 judgment meant that after 2002 he was no longer legally in custody, so that the Superior Court had no jurisdiction to hear his three subsequent discharge petitions and to determine that he remained an SDP, with the result that he was entitled to an order discharging him from the treatment center.  McIntire, supra at 263-264.

The Supreme Judicial Court disagreed.  "[B]ecause the 2002 judgment had not been reversed at the time of the petitioner's 2005, 2008, and 2010 discharge proceedings, that earlier judgment remained validly in effect, and the petitioner was therefore legally held at the treatment center as an SDP when he filed the three later discharge petitions," meaning the Superior Court had jurisdiction to adjudicate them and a fact finder could determine that he remained an SDP.  Id. at 265-266.  In short, the reversal of the 2002 judgment in 2010 did not retroactively invalidate the lawfulness of McIntire's commitment after 2002, which was a predicate for the subsequent judgments that he remained an SDP.

To be sure, McIntire involved the effect on earlier-initiated SDP proceedings of the invalidation of an SDP judgment, rather than the invalidation of criminal convictions such as those involved here. We nevertheless view McIntire as illustrating that, for purposes of G. L. c. 123A, a commitment or criminal confinement as a prisoner is not automatically rendered retroactively invalid ab initio by a subsequent determination of error in the underlying proceedings.[9]

We also acknowledge that McIntire turned in part on whether the critical 2002 judgment was void, as McIntire claimed, or merely voidable for error, as the court ultimately held. 458 Mass. at 264-266. The court in Coffin, supra at 190 n.8, found it unnecessary to consider "whether [Coffin's] sentence was void ab initio or merely voidable." In doing so the court cited, among other cases, Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374 (1940), where the United States Supreme Court discussed the difficulty of determining whether a prior judgment had been rendered void by a subsequent judicial decision (in that case, a statute's invalidity). "The past cannot always be erased by a new judicial declaration. . . .

---

[9] Compare Lynch, petitioner, 379 Mass. 757, 758 (1980), a habeas case where the court rejected "the fiction that the petitioner was out on parole because he should have been" -- a fiction on which, for different purposes, both the Department of Correction and the prisoner sought to rely.

These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified." Ibid.

As there is no single rule governing whether a withdrawn guilty plea or the resulting conviction is void or merely voidable,[10] we decline to rest our decision on that distinction. We hold only that, notwithstanding the later withdrawal of his guilty pleas, the defendant was a prisoner under § 12(b) at the time the petition was filed, and thus he was subject to being committed as an SDP.

Conclusion. The judgment on the defendant's motion to dismiss the Commonwealth's petition is reversed.

So ordered.

---

[10] Compare Commonwealth v. Berrios, 447 Mass. 701, 708 (2006) ("[A] guilty plea is void if it is involuntary and unintelligent for any reason"), quoting from Huot v. Commonwealth, 363 Mass. 91, 96 (1973), with Parreira v. Commonwealth, 462 Mass. 667, 667, 670 (2012) (where guilty plea was "the product of judicial coercion," there was "no question . . . that the defendant's plea was voidable at his option"), and Commonwealth v. Martin, 476 Mass. 72, 76 (2016) (in Hinton laboratory case, "although the defendant's guilty plea was vacated, . . . [his] conviction was merely voidable, not void ab initio, as the defendant suggests").