COMMONWEALTH *vs.* RICHARD C. GILLIS, JR.
COMMONWEALTH *vs.* MARK ANDREWS.

Essex. Worcester. December 6, 2006. - February 14, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Due Process of Law,* Sex offender. *Statute,* Construction. *Words,*
"Prisoner," "Confined."

This court concluded that individuals who are not serving any criminal
sentences and have no charges pending against them, but who have been
civilly committed to Bridgewater State Hospital under G. L. c. 123, §§ 7
and 8, following a period of incarceration, are not subject to commitment
as sexually dangerous persons under G. L. c. 123A. [356-364]

PETITION filed in the Superior Court Department on November
29, 2004.

A motion to dismiss filed by the defendant Gillis was heard
by *Elizabeth M. Fahey*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

PETITION filed in the Superior Court Department on June 11,
2004.

A motion to dismiss filed by the defendant Andrews was
heard by *James H. Wexler*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Ellyn H. Lazar-Moore*, Assistant District Attorney (*Anita L.
Russo*, Assistant District Attorney, with her) for the
Commonwealth.

*John S. Day* for Richard C. Gillis, Jr.

*David Hirsch*, Committee for Public Counsel Services, for
Mark Andrews.

COWIN, J. In these cases we revisit the statute providing for
commitment of "sexually dangerous persons" (SDPs), G. L.

c. 123A. We consider whether individuals who are not serving any criminal sentence and have no charges pending against them, but who have been civilly committed to Bridgewater State Hospital under G. L. c. 123, §§ 7 and 8, following a period of incarceration, are subject to SDP commitment. We conclude that they are not.

*The statute.* We summarize briefly those provisions governing commitment of an SDP that are pertinent to our analysis. Chapter 123A authorizes indefinite commitment to the treatment center (see G. L. c. 123A, § 2) of any person who (1) has been "convicted of . . . a sexual offense" or "charged with a sexual offense and . . . determined to be incompetent to stand trial,"[1] and (2) "suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1.

The procedure for commitment of an SDP begins with a report by an "agency with the authority to direct the release of a person presently incarcerated, confined or committed to the department of youth services," G. L. c. 123A, §§ 1, 12 (*a*), which is referred to as the "agency with jurisdiction," G. L. c. 123A, § 1. Its role is to notify the appropriate prosecutorial officials of the identity of "those prisoners or youths who have a particularly high likelihood of meeting the criteria for a sexually dangerous person." § 12 (*a*).

The next step, and the one most important to our analysis, is the filing of the petition:

> "When the district attorney or the attorney general determines that the prisoner . . . is likely to be a sexually dangerous person as defined in section [one], the [prosecutor] . . . may file a petition alleging that the prisoner . . . is a sexually dangerous person . . . ."[2]

G. L. c. 123A, § 12 (*b*). The petition is filed "in the superior

---

[1] In order for a person charged with a sexual offense but incompetent to stand trial to be committed as an SDP, a judge must first find beyond a reasonable doubt that the individual committed the offense charged. See G. L. c. 123A, § 15.

[2] The statute provides for the filing of an SDP petition against a "prisoner or youth in the custody of the department of youth services." G. L. c. 123A, § 12 (*b*).

court where the prisoner . . . is committed or . . . where the sexual offense occurred." *Id.*

*Facts and procedural history.* We set forth the relevant background of these cases, which are factually identical in all respects material to our decision. The salient facts are not contested. Richard Gillis was convicted of sexual and nonsexual offenses and was serving a term of incarceration when he was transferred to Bridgewater State Hospital pursuant to G. L. c. 123, § 18, which provides for the hospitalization of mentally ill prisoners. After the expiration of his sentence in December, 2001, he continued to be held at Bridgewater State Hospital for successive time periods pursuant to G. L. c. 123, §§ 7 and 8, the statutory provisions for involuntary civil commitment.[3] Almost three years after his sentences had expired, the Commonwealth sought to commit Gillis to the treatment center pursuant to G. L. c. 123A.

Mark Andrews was convicted and served terms of incarceration for various offenses, both sexual and nonsexual in nature. Like Gillis, he was hospitalized at Bridgewater State Hospital during his incarceration pursuant to G. L. c. 123, § 18, and was kept there after the expiration of his sentence pursuant to the civil commitment statutory regime, G. L. c. 123, §§ 7 and 8. A few weeks after Andrews's sentence expired, a district attorney petitioned to commit him to the treatment center indefinitely as an SDP pursuant to G. L. c. 123A.

Judges dismissed the Commonwealth's petitions in each case because the defendants were civil mental health patients at Bridgewater State Hospital who were no longer prisoners serving any term of penal confinement, and thus not subject to the terms of G. L. c. 123A. The Commonwealth appealed, and we then transferred the cases to this court on our own motion.

*Discussion.* The SDP statute seeks to balance the dual concerns of protecting the public from sexually dangerous persons and preserving individual liberty. See *Commonwealth* v. *Parra*, 445 Mass. 262, 264 (2005); *Commonwealth* v. *Knapp*,

---

[3]Unlike SDP commitment, which is "for an indeterminate period of a minimum of one day and a maximum of such person's natural life," G. L. c. 123A, § 14 (*d*), involuntary civil commitment is limited to an initial period of six months and renewable one-year periods, see G. L. c. 123, § 8 (*d*).

441 Mass. 157, 160 (2004). To that end, the statute limits the class of persons subject to SDP commitment to those who either have been convicted of, or face charges on but are incompetent to stand trial for, an enumerated sexual offense. See G. L. c. 123A, § 1. In general, the triggering event for SDP commitment is the impending release, usually from prison, of a sex offender. See G. L. c. 123A, § 12 (*a*) (requiring "agency with jurisdiction" to notify prosecutorial authorities six months prior to release of sex offender); G. L. c. 123A, §§ 12 (*e*), 14 (*e*) (authorizing temporary commitment of person sought to be committed as SDP who is "scheduled to be released from jail, house of correction, prison or a facility of the department of youth services").

At issue in the present cases is whether the statute also subjects individuals to SDP commitment who, though having at one time committed an enumerated offense, having already completed a term of incarceration, and facing no pending charges, are civilly committed to Bridgewater State Hospital. To determine whether the language of G. L. c. 123A extends this far, we apply familiar principles of statutory interpretation. However, our interpretation is necessarily informed by the rule that "[l]aws in derogation of the liberty or general rights, of the citizen . . . are to be strictly construed . . . ." *Commonwealth v. Beck*, 187 Mass. 15, 17 (1904). While the rule is principally applicable to criminal cases, and proceedings under G. L. c. 123A are civil in nature, "the potential deprivation of liberty to those persons subjected to these proceedings," *Commonwealth v. Bruno*, 432 Mass. 489, 502 (2000), warrants this more stringent analysis.[4] Narrowly construing the SDP statute, as with other statutes in derogation of liberty, not only helps avoid possible constitutional due process problems, see *Commonwealth v. Nieves*, 446 Mass. 583, 597-598 (2006), but also helps ensure that individuals are not deprived of liberty without a clear statement of legislative intent to do so. Indeed, we

[4]Similarly, the fundamental liberty interest implicated by the SDP statute, that of freedom from physical restraint, requires strict scrutiny in determining whether its provisions satisfy the constitutional dictates of substantive due process. See *Commonwealth v. Knapp*, 441 Mass. 157, 164-165 (2004); *Commonwealth v. McLeod*, 437 Mass. 286, 292-293 (2002); *Commonwealth v. Bruno*, 432 Mass. 489, 502-503 (2000).

adopted this approach implicitly in *Commonwealth* v. *McLeod*, 437 Mass. 286 (2002). We refused to broaden the class of persons subject to SDP commitment where "the language of G. L. c. 123A [did] not plainly and unambiguously [so] provide," and stated that "any broadening of the statute would be the province of the Legislature, not this court." *Id.* at 294. With these principles in mind, we turn to the question of statutory interpretation at issue.

On its face, the statute does not provide for SDP commitment of individuals who, at the time of the commitment petition, are held at Bridgewater State Hospital after completing a term of incarceration. To the contrary, the statute contemplates commitment of those who are currently serving a criminal sentence or committed to the Department of Youth Services, or who face pending charges. General Laws c. 123A, § 12 (*b*), the provision that authorizes prosecutors to petition for an individual's commitment as an SDP, repeatedly employs the term "prisoner":

> "When the district attorney or the attorney general determines that *the prisoner . . .* is likely to be a sexually dangerous person as defined in section 1, the district attorney or the attorney general at the request of the district attorney may file a petition alleging that *the prisoner . . .* is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court where *the prisoner . . .* is committed or in the superior court of the county where the sexual offense occurred."

*Id.* See G. L. c. 123A, §§ 12 (*a*), 13 (*a*) (also referring to prisoners).

In interpreting provisions of the General Laws, the Legislature has directed that "[w]ords and phrases shall be construed according to the common and approved usage of the language . . . ." G. L. c. 4, § 6, Third. "We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Robinson*, 444 Mass. 102, 105 (2005), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). The word "prisoner," in its "common and approved usage," refers to an individual who is

either serving a criminal sentence or awaiting trial. See 12 Oxford English Dictionary 513 (2d ed. 1989) ("one who is kept in custody . . . as the result of a legal process, either as having been condemned to imprisonment as a punishment, or as awaiting trial for some offence"); Webster's Third New Int'l Dictionary 1804 (1993) ("a person held under arrest or in prison"); Black's Law Dictionary 1213 (7th ed. 1999) ("A person who is serving time in prison"; "[a] person who has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison").

We recognize that G. L. c. 125, § 1 (m), defines a prisoner potentially more broadly as "a committed offender and such other person as is placed in custody in a correctional facility in accordance with law." That same section states that the definitions provided therein apply "unless the context otherwise requires." G. L. c. 125, § 1. Here, the context of the SDP statute, which we must construe narrowly, requires a construction of "prisoner" that is no broader than its ordinary usage. We will not assume that mentally ill persons civilly committed to Bridgewater State Hospital are "prisoners" where "the language of G. L. c. 123A does not plainly and unambiguously provide" such a definition. Commonwealth v. McLeod, supra at 294. Because the defendants in these cases, who completed their sentences and faced no charges at the time of the petitions, are not "prisoners" in the ordinary sense of the word, they are not within the class of persons for whom G. L. c. 123A, § 12 (b), authorizes SDP commitment.[5] The key operative fact of the statute is that SDP commitment is only available if the procedure is initiated before the termination of a period of criminal confinement; if it is not, the statute no longer applies.

The Commonwealth contends that Bridgewater State Hospital has a unique status that renders a person placed there technically a "prisoner." In support, the Commonwealth relies on the

[5]Other aspects of the statute reinforce the conclusion that those placed in mental health facilities are not "prisoners" subject to SDP commitment. For instance, while the statute provides for temporary SDP commitment of a person who is "scheduled to be released from jail, house of correction, prison or a facility of the department of youth services," G. L. c. 123A, §§ 12 (e), 14 (e), it makes no mention of release from mental health facilities.

following chain of statutory definitions: (1) "prisoner" is "a committed offender and such other person as is placed in custody in a correctional facility in accordance with law," G. L. c. 125, § 1 (*m*); (2) "state correctional facility" is "any correctional facility owned, operated, administered or subject to the control of the department of correction, including but not limited to . . . Massachusetts Correctional Institution, Bridgewater," G. L. c. 125, § 1 (*n*); and (3) "[t]he Bridgewater state hospital shall be part of the Massachusetts Correctional Institution, Bridgewater," G. L. c. 125, § 18. However, the Commonwealth's definition would make any mentally ill person placed at Bridgewater State Hospital a "prisoner." Cf. G. L. c. 123, § 7 (any male "patient" at mental health facility who is in need of strict security may be committed to Bridgewater State Hospital). Furthermore, there is no indication that the Legislature intended individuals at Bridgewater State Hospital to face potential SDP commitment, but not individuals at other institutions that do not happen to be affiliated with the Department of Correction.[6] The Legislature could not have intended SDP commitment to turn on the fortuity of where an individual is placed, and we do not interpret statutes so as to produce an illogical result. *ROPT Ltd. Partnership* v. *Katin,* 431 Mass. 601, 603 (2000), and cases cited.

Nor does *Commonwealth* v. *Geary,* 31 Mass. App. Ct. 930 (1991), support the Commonwealth's interpretation of "prisoner." There, the Appeals Court held that a defendant serving a life sentence who was transferred to the SDP treatment center at Bridgewater was still a "prisoner" for purposes of an enhanced penalty statute. *Id.* at 931. In so holding, the Appeals Court relied specifically on the fact that "[h]is life sentence . . . remained in effect and, had he been found at some point to be no longer a sexually dangerous person, he would have been returned [to prison] to continue serving the underlying sentence." *Id.* Because the defendants in the present cases were no longer serving any criminal sentence while at Bridgewater

---

[6]Bridgewater State Hospital, which is used for patients in need of strict security, is only one of many institutions to which a person may be civilly committed. See G. L. c. 123, § 7 (authorizing superintendent of any mental health facility to petition for patient's involuntary commitment).

State Hospital at the time of their SDP petitions, *Commonwealth* v. *Geary, supra,* does not apply.

Despite the statute's repeated references to "prisoners," the Commonwealth argues that the defendants nonetheless fall under the SDP statute because it mentions persons "incarcerated, *confined* or committed to the department of youth services" (emphasis added).[7] G. L. c. 123A, § 1. Yet the statute's use of the word "confined" does not expand the class of individuals subject to SDP commitment under § 12 (*b*). Nor are we persuaded by the Commonwealth's argument that interpreting "confined" to include the defendants is necessary so as not to render that word superfluous. "Confined" may refer to persons in custody who are incompetent to stand trial for an offense; such persons, while neither "incarcerated" nor "committed to the department of youth services," are nonetheless expressly made subject to SDP commitment. See G. L. c. 123A, §§ 1, 12 (*a*). Because they have been charged with an offense and are awaiting trial, such persons also fall squarely within the ordinary meaning of "prisoner" in G. L. c. 123A, § 12 (*b*).

The amendments to the SDP statute in response to our decision in *Commonwealth* v. *McLeod,* 437 Mass. 286 (2002), do not require a different result. In the *McLeod* case, the defendant had been released after completing his sentence for an enumerated sexual offense, and was subsequently convicted of and imprisoned for a nonsexual offense. *Id.* at 286-287. During this second term of incarceration, the Commonwealth petitioned to commit the defendant as an SDP. *Id.* at 287. We affirmed the dismissal of the petition, holding that the SDP statute as then in effect did not authorize commitment of any and all incarcerated persons merely because, "at some point in the past, they had been convicted of an enumerated sexual offense." *Id.* at 294. Subsequently, the Legislature amended the statute to apply to "a person who has *ever* been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense as defined in section 1, *regardless of the reason for the*

---

[7]No party has argued that the phrase "to the department of youth services" modifies the word "confined" as well as the word "committed"; rather, the parties treat "incarcerated," "confined," and "committed to the department of youth services" as separate conditions.

*current incarceration, confinement or commitment*" (emphasis added). G. L. c. 123A, § 12 (*a*), as amended by St. 2004, c. 66, §§ 7-9. The language of the 2004 amendments brings within the statute's purview the circumstances in the *McLeod* case: a convicted sex offender currently serving a sentence or facing charges for a nonsexual offense. Put differently, the 2004 amendments authorize SDP commitment of any *prisoner* who has ever been convicted of an enumerated offense. The amended language does not, however, apply to defendants not serving any sentence who have no criminal charges pending against them.

The Commonwealth next argues that interpreting the statute to authorize SDP commitment of the defendants is necessary to further the statute's purpose of protecting society from sexually dangerous persons at the time of "their actually being reintegrated into the community." *Commonwealth* v. *Shedlock*, 58 Mass. App. Ct. 445, 452 (2003). The Commonwealth contends that it should not be required prematurely to petition for the SDP commitment of persons who, like the defendants, are still segregated from society by some other legal means.

The Commonwealth's reliance on the *Shedlock* decision is misplaced. That case, decided after the *McLeod* case but before the 2004 amendments to the SDP statute, held that a defendant serving a *prison sentence* for an enumerated sexual offense and a consecutive *prison sentence* for a nonsexual offense was subject to an SDP petition while serving the latter sentence.[8] See *Commonwealth* v. *Shedlock*, *supra* at 451 (" 'release' as used in § 12 [*a*] must mean a sexual offender's release into general society at the end of a continuous period of *incarceration* that began with his conviction for a sexual offense" [emphasis added]). In so holding, the Appeals Court stressed that the defendant's consecutive sentence prevented the Commonwealth from filing a meaningful SDP petition while he was serving his sexual offense sentence — it would simply have had

---

[8]Under the current SDP statute, which authorizes commitment of any prisoner who has "ever" been convicted of an enumerated offense, the defendant in *Commonwealth* v. *Shedlock*, 58 Mass. App. Ct. 445 (2003), clearly could have been the subject of an SDP petition while serving his sentence for the nonsexual offense.

to renew the petition years later at the time of the defendant's release. Here, nothing prevented the Commonwealth from petitioning for the SDP commitment of the defendants under G. L. c. 123A prior to the completion of their criminal sentences, rather than having them civilly committed under G. L. c. 123, §§ 7 and 8.

Furthermore, the Commonwealth concedes that the statute does not provide for SDP commitment of a one-time convicted sex offender who, long after release from a term of incarceration, is committed to a mental facility. Rather, the Commonwealth urges that we construe the statute to apply only to those individuals who are subject to a period of *continuous* confinement beginning with a term of incarceration. In so arguing, however, the Commonwealth asks us to read an element of "continuous confinement" into the statute that simply is not there. Where, as here, the statutory text is clear, "[w]e are not free simply to add language to a statute for the purpose of 'interpret[ing] [the statute] according to [the Legislature's] perceived objectives.' " *Commonwealth* v. *One 1980 Volvo Auto.*, 388 Mass. 1014, 1015-1016 (1983), quoting *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982).[9]

*Conclusion.* The plain language of G. L. c. 123A does not provide for SDP commitment of individuals who have completed a criminal sentence and have no pending charges, but who are civilly committed to Bridgewater State Hospital under G. L. c. 123, §§ 7 and 8. Indeed, there is no indication that the Legislature even contemplated this eventuality, and "an event or contingency for which no provision is made does not justify judicial legislation." *Leopoldstadt, Inc.* v. *Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 92 (2002),

---

[9]We are puzzled by the Commonwealth's concern that our decision today will encourage prisoners purposefully to seek transfer to Bridgewater State Hospital to avoid potential SDP commitment. The defendants concede that, under the current statute, a prisoner serving a criminal sentence who is placed at Bridgewater State Hospital under G. L. c. 123, § 18, is still a "prisoner" subject to SDP commitment until the expiration of his sentence. See *Commonwealth* v. *Geary*, 31 Mass. App. Ct. 930, 931 (1991) (inmate serving life sentence transferred to SDP treatment center at Bridgewater was still "prisoner"). For purposes of the SDP statute, a prisoner thus has nothing to gain from transfer to Bridgewater State Hospital.

quoting *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 547 (1976). The fact that the current SDP statute applies only to those serving a term of penal confinement may very well reflect a legislative judgment that those who are merely civilly committed due to mental illness should not be subject to SDP commitment. In any case, "if this conclusion does not reflect the mind of the Legislature, it is free to change the law . . . ." *Nei* v. *Burley*, 388 Mass. 307, 315 (1983). The SDP statute, as a statute in derogation of liberty, must be strictly construed, and "any broadening of the statute would be the province of the Legislature, not this court." *Commonwealth* v. *McLeod, supra* at 294. The judgments of the Superior Court dismissing the petitions are affirmed.

*So ordered.*