NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11831

COMMONWEALTH  vs.  BRIAN LIBBY.


Suffolk.     May 7, 2015. - July 1, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.



Sex Offender.  Due Process of Law, Sex offender, Pretrial
detainees.  Statute, Construction.  Words, "Prisoner."



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on November 6, 2014.

The case was reported by Duffly, J.


Eric Tennen (Michael F. Farrington with him) for the
defendant.
Canan Yesilcimen, Assistant District Attorney, for the
Commonwealth.


GANTS, C.J.  The issue on appeal is whether the

Commonwealth may file a petition pursuant to G. L. c. 123A,

§ 12, to civilly commit someone as a sexually dangerous person

(SDP) who previously was convicted of a "sexual offense," as

defined under G. L. c. 123A, § 1, but is currently in custody

only because he was unable to post bail in a pending criminal case. We conclude that the Commonwealth may file an SDP petition under § 12 against a person who has been convicted of a sexual offense only where the person is in custody because of a criminal conviction, an adjudication as a delinquent juvenile or youthful offender, or a judicial finding that the person is incompetent to stand trial. The Commonwealth may not file such a petition where, as here, the defendant is in custody only because he is awaiting trial, unless a judge has found the defendant incompetent to stand trial.

Background. The defendant, Brian Libby, was convicted in 2002 of indecent assault and battery on a child under the age of fourteen, which qualifies as a "sexual offense" under G. L. c. 123A, § 1, and was sentenced to two and one-half years in a house of correction. He was subsequently convicted of other offenses, but was not serving a sentence on any of these convictions when he was indicted on October 11, 2013, for failure to register as a sex offender, subsequent offense. At his arraignment in the Superior Court, a judge set bail in the amount of $5,000. The defendant has been unable to post bail on this pending indictment, and has remained in custody for that reason alone awaiting trial.

On May 12, 2014, the Commonwealth filed an SDP petition for civil commitment pursuant to G. L. c. 123A, § 12. The defendant

moved to dismiss the petition for "failure of jurisdiction," claiming that the district attorney is not authorized to file a petition against the defendant when he is in custody only because he is "a homeless person charged with a crime and unable to afford . . . bail." The judge denied the motion. Citing Commonwealth v. Gillis, 448 Mass. 354, 358-359 (2007), and Commonwealth v. Allen, 73 Mass. App. Ct. 862, 864 (2009), the judge concluded that § 12 "contemplates" the SDP commitment of persons previously convicted of a sexual offense "who are currently serving a criminal sentence or who face pending charges and are awaiting trial." The defendant sought interlocutory review of the denial of the motion to dismiss, pursuant to G. L. c. 211, § 3. The single justice reserved and reported the case without decision for determination by the full court.

Discussion. We briefly summarize the relevant provisions of G. L. c. 123A regarding the civil commitment of a person found to be a "sexually dangerous person," as defined in § 1.[1]

---

[1] A "sexually dangerous person" (SDP) is defined as

"any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which

The procedure for filing an SDP petition is set forth in § 12. Under § 12 (a), an "agency with jurisdiction"[2] must notify in writing the relevant district attorney[3] and the Attorney General six months prior to the release of three categories of persons.[4]

---

makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of [sixteen] years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

G. L. c. 123A, § 1.

[2] An "agency with jurisdiction" is defined as

"the agency with the authority to direct the release of a person presently incarcerated, confined or committed to the department of youth services, regardless of the reason for such incarceration, confinement or commitment, including, but not limited to a sheriff, keeper, master or superintendent of a jail, house of correction or prison, the director of a custodial facility in the department of youth services, the parole board and, where a person has been found incompetent to stand trial, a district attorney."

G. L. c. 123A, § 1.

[3] The relevant district attorney is the "district attorney of the county where the offense occurred." G. L. c. 123A, § 12 (a).

[4] Where a person "is returned to prison for no more than six months as a result of a revocation of parole or . . . is committed for no more than six months, such notice shall be given as soon as practicable following such person's admission to prison." G. L. c. 123A, § 12 (a).

The three categories are (1) "a person who has ever been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense as defined in [§] 1, regardless of the reason for the current incarceration, confinement or commitment"; (2) a person charged with such a sexual offense who "has been found incompetent to stand trial;" and (3) a person charged with "any offense," who "is currently incompetent to stand trial," and who "has previously been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense."  G. L. c. 123A, § 12 (a).  If the district attorney or the Attorney General determines that the "prisoner or youth in the custody of the department of youth services is likely to be a sexually dangerous person as defined in [§] 1," the district attorney or the Attorney General at the request of the district attorney may file an SDP petition "in the superior court where the prisoner or youth is committed or in the superior court of the county where the sexual offense occurred."  G. L. c. 123A, § 12 (b).

It is plain from the statute that the relevant district attorney or the Attorney General may file an SDP petition only against a person who is included within the three categories of persons for whom notice must be given of their impending release.  See Gillis, 448 Mass. at 357 ("In general, the triggering event for SDP commitment is the impending release,

usually from prison, of a sex offender"); Commonwealth v. Nieves, 446 Mass. 583, 586 (2006) (SDP commitment process "begins" with agency with jurisdiction giving notice six months prior to release of person previously convicted of sexual offense); Commonwealth v. McLeod, 437 Mass. 286, 290-291 (2002). Where the defendant here has not been found incompetent to stand trial, the Commonwealth contends that the defendant falls within the first category. The Commonwealth's argument essentially rests on two grounds.

First, the Commonwealth notes that the first category includes any person convicted or adjudicated of a sexual offense who is currently incarcerated, confined, or committed, "regardless of the reason for the current incarceration, confinement or commitment." Because the defendant previously was convicted of a sexual offense and is in confinement awaiting trial due to his failure to post bail, the Commonwealth maintains that he meets these criteria.

Second, the Commonwealth notes that § 12 (b) permits a district attorney to file an SDP petition against a "prisoner," and that we have said that "[t]he word 'prisoner,' in its 'common and approved usage,' refers to an individual who is either serving a criminal sentence or awaiting trial." Gillis, 448 Mass. at 358-359, citing 12 Oxford English Dictionary 513 (2d ed. 1989) ("one who is kept in custody . . . as the result

of a legal process, either as having been condemned to imprisonment as a punishment, or as awaiting trial for some offence"), Webster's Third New International Dictionary 1804 (1993) ("a person held under arrest or in prison"), and Black's Law Dictionary 1213 (7th ed. 1999) ("A person who is serving time in prison"; "[a] person who has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison").

In determining whether § 12 permits an SDP petition to be filed against a person previously convicted of a sexual offense, who is competent to stand trial, and is in custody awaiting trial, we apply familiar principles of statutory interpretation, "informed by the rule that '[l]aws in derogation of the liberty or general rights, of the citizen . . . are to be strictly construed.'" Gillis, supra at 357, quoting Commonwealth v. Beck, 187 Mass. 15, 17 (1904). "Narrowly construing the SDP statute, as with other statutes in derogation of liberty, not only helps avoid possible constitutional due process problems, . . . but also helps ensure that individuals are not deprived of liberty without a clear statement of legislative intent to do so" (citation omitted). Gillis, supra. Applying the required strict construction of § 12, we conclude that it does not permit an SDP petition to be filed against a person previously convicted of a sexual offense who is in custody awaiting trial,

where there has been no finding that the person is incompetent to stand trial.

As to the Commonwealth's first argument, we note that the phrase, "regardless of the reason for the current incarceration, confinement or commitment," was added to § 12 (a) through an amendment in 2004.  See St. 2004, c. 66, § 8.  Before that language was added, we had declared in McLeod, 437 Mass. at 286, that § 12 (a) did not apply to "persons convicted of sexual offenses who have completed and been released from those sentences but who are later serving sentences for crimes that are not statutorily enumerated 'sexual offenses.'"  In that case, the defendant had been convicted of aggravated rape and kidnapping, but had completed the sentences for those crimes, and was in a house of correction serving time for convictions that were not sexual offenses when the SDP petition was filed.  Id. at 287.  We determined that "[t]he thrust of the statutory scheme [was] that commitment petitions should be brought against persons currently incarcerated for sexual offenses who are about to be released into the community but who, because they are sexually dangerous, are likely to commit another sexual offense, and, therefore, should not be released."  Id. at 291.  We noted that "[w]ere we to conclude otherwise, any defendant serving a sentence for any crime who had ever in the past committed an enumerated sexual offense, no matter how temporally distant,

would be eligible for civil commitment, contingent on that defendant's current mental condition." Id. at 292.

The 2004 amendment revised § 12 (a) to do precisely that. The legislative history suggests that the Legislature did not intend by this amendment to do more than allow an SDP petition to be filed against a person convicted of a sexual offense who was serving a sentence for a nonsexual offense, or who was found incompetent to stand trial on a nonsexual offense.[5] See Memorandum from William J. Meade, Deputy Chief Counsel, and

---

[5] We note that, in 2002, Alexandra Zapp was brutally murdered at a rest stop on a Massachusetts highway by a person previously convicted of a sexual offense who had recently been released from incarceration following a conviction of a nonsexual offense. See Lambiaso, "Ally Zapp" Law, Signed by Romney, Grants New Powers Over Offenders, State House News Service, Apr. 7, 2004. Press reports after her murder noted that the law did not allow the district attorney to file an SDP petition before the person's release, because he was serving a sentence on a nonsexual offense. See Confining the Dangerous, Boston Globe, July 20, 2002, at A.12 (prosecutors' attempt to civilly commit Zapp murder suspect failed because SDP law was interpreted to deny SDP petition "if the most recent offense for which [a person previously convicted of a sexual offense] is held is not a sex crime"); Lambiaso, supra ("Romney and lawmakers say the law is needed to close a loophole in the 1999 civil commitment statute that prevents judges from keeping criminals in jail if they previously committed a sex crime but were serving a sentence for something non-sexual"). See also Testimony of Lieutenant Governor Kerry Healey before the Joint Committee on the Judiciary (testifying in favor of 2004 amendment to SDP law and stating, "It is an honor to sit beside Ms. Andrea Casanova, Alexandra Zapp's mother. Her involvement in this issue will help to keep her daughter's memory alive and protect innocent people from sexually dangerous individuals"); State House News Service, (Senate Sess.), Oct. 7, 2003 (Statement of Sen. Brian A. Joyce that proposed amendment to SDP law "relates to the Zapp murder" and that "[t]he murderer could have been civilly committed under [the proposed] bill").

Daniel B. Winslow, Chief Legal Counsel, to Senior Staff of the Executive Department (Apr. 7, 2004) (McLeod opinion highlighted limitations of pre-2004 SDP law by holding that person previously convicted of sexual offense was ineligible for civil commitment "because the offense for which the [person] was serving a sentence at the time the commitment petition was filed was not a statutorily-enumerated 'sexual offense'" [emphasis added]); Testimony of Lieutenant Governor Kerry Healey before the Joint Committee on the Judiciary (2004 amendment to SDP law "allows district attorneys to file petitions to civilly commit incarcerated persons as sexually dangerous persons, regardless of the purpose of their current incarceration. For example, an individual serving time for assault and battery could be civilly committed based on prior sex offenses"). Although the language added was broader than "incarceration," and included "confinement or commitment," we need not interpret that language to include all those confined awaiting trial to avoid rendering the words superfluous. Confinement "may refer to persons in custody who are incompetent to stand trial for an offense." Gillis, 448 Mass. at 361. Commitment may refer to a commitment to the department of youth services following a juvenile adjudication. See id. at 361, 363-364 (SDP petition may not be filed against individual who had completed his criminal sentence and was civilly committed due to mental illness); G. L. c. 123A,

§ 1 ("agency with jurisdiction" defined as "agency with the authority to direct the release of a person presently incarcerated, confined or committed to the department of youth services").

The 2004 amendment also added a third category of persons who may be subject to an SDP petition: a person charged with "any offense," who "is currently incompetent to stand trial," and who "has previously been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense." St. 2004, c. 66, § 9. If the first category included all persons convicted of sexual offenses who were in custody awaiting trial, there would be no reason for the Legislature to add this third category, which includes only the narrow subset of those awaiting trial on any offense who were found to be incompetent.

Moreover, if the Legislature intended the addition of the phrase, "regardless of the reason for the current incarceration, confinement or commitment," to permit an SDP petition to be filed against a person previously convicted of a sexual offense, who is confined awaiting trial without being found incompetent, the Legislature would have amended the requirement that an "agency with jurisdiction" give written notice six months prior to such person's release. Such a notice requirement reasonably could not be applied to a person who is in custody only because

of an inability to post bail, who could obtain immediate release upon posting bail.  The Legislature in § 12 (a) recognized that six months' prior notice may not be practicable in certain circumstances, but it limited those circumstances to two:  "the case of a person who is returned to prison for no more than six months as a result of a revocation of parole or who is committed for no more than six months."  If the Legislature had contemplated that an SDP petition could be filed after a person's arrest while that person was in custody awaiting a bail determination or seeking the funds to post bail, it would have recognized this possibility in its notice provision.

As to the Commonwealth's second argument, we acknowledge the dictum in Gillis, 448 Mass. at 358-359, that included those "awaiting trial" in the dictionary definition of the word "prisoner."  We also recognize that "prisoner" is a word that is not defined in G. L. c. 123A, § 1, but is used in § 12 (b), which provides that "the district attorney . . . may file a petition alleging that the prisoner or youth is a sexually dangerous person."  But we are not persuaded that this means that the Legislature intended to permit the filing of an SDP petition against someone who is in custody awaiting trial and who has not been found incompetent.

The issue in Gillis was whether an SDP petition may be filed against a person previously convicted of a sexual offense

who was no longer serving a sentence but was civilly committed for mental illness. 448 Mass. at 355-356. The adoption of the dictionary definition of "prisoner" supported our conclusion that a person who was civilly committed was not a "prisoner" as that word is used in § 12 (b); we did not need to decide whether a person held in custody awaiting trial was a "prisoner." Id. at 359. Moreover, it would be unreasonable to strip the words "prisoner or youth" from their context in § 12 (b), apply their dictionary definitions, and conclude that the Legislature intended that a district attorney may file an SDP petition against any prisoner or youth, as those words are commonly used. Those words are plainly a shorthand reference to the three categories of persons identified in § 12 (a) who are subject to the filing of an SDP petition, and are limited in scope to those three categories of persons.

For all these reasons, we conclude that interpreting the first category of persons subject to the filing of an SDP petition to include all persons previously convicted of a sexual offense who are in custody awaiting trial would be inconsistent with other provisions in § 12 and unsupported by the legislative history. It also would raise serious practical problems that would complicate the already complex SDP petition procedure. Under the Commonwealth's interpretation, an SDP petition could be filed against a person previously convicted of a sexual

offense who is in custody awaiting trial, regardless of how minor the charge, even if the person has yet to appear at arraignment or is awaiting the arrival of family members to post bail.  This could invite an unseemly race to file the SDP petition before the defendant posted bail, and might provide the Commonwealth with an incentive to delay the arraignment or hinder the posting of bail to allow it the time needed to file the petition.  Moreover, the Commonwealth's interpretation would mean that an SDP proceeding would likely occur at the same time as a criminal proceeding, and that an acquittal in the criminal case would not end the SDP proceeding.  It would also mean that a defendant who was unable to afford bail would be more vulnerable to the filing of an SDP petition than a comparable defendant with the means to post bail.

Because G. L. c. 123A, § 12, must be strictly construed, a clear statement of legislative intent is needed to permit an SDP petition to be filed against those in custody awaiting trial who were not found incompetent.  See Gillis, 448 Mass. at 357.  We conclude that there is nothing close to a clear statement of legislative intent to do so.  As a result, the SDP petition against the defendant must be dismissed.[6]

---

[6] If the defendant were to be convicted of the pending charge and sentenced to a period of incarceration, the Commonwealth, pursuant to G. L. c. 123A, § 12, would not be

Conclusion.  For the reasons given, we remand the case to the county court for entry of a judgment allowing the defendant's petition pursuant to G. L. c. 211, § 3, and directing the entry of a judgment in the Superior Court dismissing the Commonwealth's petition for commitment pursuant to G. L. c. 123A, § 12.

So ordered.

---

barred from filing a new SDP petition against him prior to his release from incarceration.