NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12495

COMMONWEALTH  vs.  RICHARD GARDNER.


Plymouth.     May 7, 2018. - September 14, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Sex Offender.  Due Process of Law, Sex offender.  Jurisdiction,
     Sex offender.  Imprisonment, Transfer of
     prisoner.  Statute, Construction.  Words, "Prisoner."



     Civil action commenced in the Superior Court Department on
June 14, 2017.

     A motion to dismiss was heard by Mark C. Gildea, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Gail M. McKenna, Assistant District Attorney (Shanan L.
Buckingham, Assistant District Attorney, also present) for the
Commonwealth.
     Joseph M. Kenneally for the defendant.
     David B. Hirsch, for Committee for Public Counsel Services,
amicus curiae, submitted a brief.


     CYPHER, J.  We are called upon once again to determine the

scope of persons who the Commonwealth may lawfully seek to

commit as sexually dangerous persons under G. L. c. 123A.

General Laws c. 123A, § 12 (b), authorizes the Commonwealth to file a petition to civilly commit a "prisoner or youth" deemed likely to be a "sexually dangerous person" (SDP), as that phrase is defined in G. L. c. 123A, § 1. "Prisoner" refers, in pertinent part, to a person who has previously been convicted of an enumerated sexual offense in § 1, and is presently in custody as a result of a criminal conviction. See Commonwealth v. Libby, 472 Mass. 93, 95-96 (2015). We consider in this case whether "prisoner" includes an individual in the custody of, and serving a sentence in, another State. Applying the required narrow construction of the SDP statute, our answer is no. There can be no doubt that the Legislature intended SDP commitment to extend only to those prisoners who are in Massachusetts custody, serving a Massachusetts sentence, at the time the Commonwealth files a commitment petition under § 12 (b).

When the Commonwealth filed the petition in this case, the defendant was serving a Rhode Island sentence, albeit in a Massachusetts prison, pursuant to his transfer under the New England Interstate Corrections Compact (NEICC). The NEICC is an agreement among the six New England States authorizing the transfer of inmates between correctional facilities in those States, in order to provide "for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." Under the NEICC, the defendant

remains under the jurisdiction of Rhode Island, not Massachusetts, following his transfer to a Massachusetts prison -- meaning the transfer conferred upon the Commonwealth no greater authority to commit him than it possessed while the defendant was in Rhode Island, which is none.  We affirm the motion judge's dismissal of the Commonwealth's petition.

Facts.  The defendant, Richard Gardner, was convicted of several sexual assaults committed against four children in 1987 and 1988.  The 1987 offense occurred when the defendant was twenty-one years old; he was charged with kidnapping and rape of a child in Massachusetts.  While released on bail, in June and July of 1988, the defendant sexually assaulted three additional children in Massachusetts and Rhode Island.  He was apprehended in Rhode Island, and in May, 1989, a Rhode Island jury found him guilty of sexual offenses and other crimes.  He was ultimately sentenced in Rhode Island to fifty years in prison, with thirty years to serve and the balance suspended.[1]  Separately, in August, 1989, while in Rhode Island custody, the defendant pleaded guilty to the Massachusetts charges of kidnapping and child rape, stemming from the 1987 incident; for this he received a sentence of from ten to fifteen years in prison.  In

---

[1] The defendant was originally sentenced to 190 years in prison, but in 1992 his Rhode Island convictions were reversed; he pleaded guilty to the same charges in 1993 and received the revised fifty-year sentence.

May, 1991, the defendant also pleaded guilty to Massachusetts charges for the sexual offenses he had committed in July, 1988, and received another sentence of from seven and one-half to ten years.[2]

In April, 2004, Rhode Island released the defendant to the custody of the Massachusetts Department of Correction to serve the two Massachusetts sentences. Near the end of the defendant's sentences, the Plymouth County district attorney (district attorney) was notified of the defendant's impending release, but for reasons that are unclear, the district attorney failed at that time to petition to have the defendant civilly committed as a sexually dangerous person. In October, 2016, the defendant was released from Massachusetts custody to begin his probationary sentence in Rhode Island.

Eleven days after his release, the defendant was arrested in Quincy for violating a local bylaw that prohibits sex offenders from entering the public library.[3] He was brought back to Rhode Island where he was found in violation of his probation and sentenced to one year in prison, with the balance of his

---

[2] While in Rhode Island custody, the defendant sued the Massachusetts commissioner of correction, in an unsuccessful attempt to receive credit against his Massachusetts sentences for the time he had served in Rhode Island. See Gardner v. Commissioner of Correction, 56 Mass. App. Ct. 31, 33-34 (2002).

[3] Because the defendant is a Massachusetts resident, his Rhode Island probation was transferred to the Superior Court in Norfolk County for supervision.

probation to resume upon his release. In March, 2017, the district attorney contacted an administrator with the Massachusetts Department of Correction to inform him of the district attorney's ongoing efforts to "get [the defendant] back to" Massachusetts to secure "access to [the defendant] to file the [SDP] petition." With four weeks left to serve on his one-year Rhode Island sentence, the defendant was involuntarily transferred to Massachusetts, pursuant to the NEICC, to serve the remainder of his sentence. The day after the defendant's transfer from Rhode Island to Massachusetts, the Commonwealth filed the underlying petition in the Superior Court seeking his civil commitment as an SDP.

With the defendant's sentence set to expire on July 13, 2017, the Superior Court judge temporarily committed the defendant pending a probable cause determination. Later that month, the judge found probable cause to believe that the defendant was sexually dangerous, and continued his temporary commitment pending a psychological examination and trial. In August, 2017, the defendant moved to dismiss the petition, arguing that (1) the district attorney lacked the authority to file the petition because the defendant was not serving a Massachusetts sentence at the time it was filed, and (2) the defendant's transfer was invalid because it violated provisions of the NEICC. The judge granted the defendant's motion,

agreeing that because the defendant was not serving a Massachusetts sentence, the district attorney lacked the authority to petition for the defendant's commitment. The judge stayed the defendant's release pending the Commonwealth's appeal, which entered in the Appeals Court in January, 2018, and was transferred, sua sponte, to this court in March. The defendant remains civilly committed in the Massachusetts Treatment Center, where he has been since the expiration of his Rhode Island sentence in July, 2017.

Discussion.[4] General Laws c. 123A, § 12 (b), provides:

"When the district attorney or the attorney general determines that the prisoner or youth . . . is likely to be a sexually dangerous person as defined in [§ 1], the [prosecutor] . . . may file a petition alleging that the prisoner . . . is a sexually dangerous person . . . ."[5]

"Prisoner or youth" are not defined terms in G. L. c. 123A. We have recognized, however, that those terms (as they are

---

[4] We acknowledge the brief submitted by amicus curiae, the Committee for Public Counsel Services.

[5] "Sexually dangerous person" is defined, in pertinent part, as "any person who has been [] convicted of . . . a sexual offense" enumerated in § 1, "and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1.

"Sexual offense" is defined to include a host of enumerated sexual offenses under Massachusetts law, "or a like violation of the laws of another state, the United States or a military, territorial, or Indian tribal authority; and any other offense, the facts of which, under the totality of the circumstances, manifest a sexual motivation or pattern of conduct or series of acts of sexually-motivated offenses." Id.

employed in § 12 [b]) are "plainly a shorthand reference" to "the three categories of persons for whom notice must be given of their impending release" under § 12 (a), "and are limited in scope to those three categories." Libby, 472 Mass. at 95, 100. See id. at 95 ("It is plain from the statute that the relevant district attorney or the Attorney General may file an SDP petition only against a person who is included within the three categories of persons for whom notice must be given"). Under § 12 (a), an "agency with jurisdiction" must notify "the district attorney of the county where the offense occurred and the attorney general six months prior to the release" of three categories of persons. These are "person[s] who [have] been convicted of a sexual offense," and are presently "in custody because of [1] a criminal conviction, [2] an adjudication as a delinquent juvenile or youthful offender, or [3] a judicial finding that the person is incompetent to stand trial." Libby, supra at 93. See G. L. c. 123A, § 12 (a).[6]

---

[6] Section 12 (a) describes the three categories of persons for whom notice must be given as "(1) 'a person who has ever been convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense as defined in [§ 1], regardless of the reason for the current incarceration, confinement or commitment'; (2) a person charged with such sexual offense who 'has been found incompetent to stand trial,' and (3) a person charged with 'any offense,' who 'is currently incompetent to stand trial,' and who 'has previously been convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense.'" Commonwealth v. Libby, 472 Mass. 93, 95 (2015), quoting G. L. c. 123A, § 12 (a).

The Commonwealth contended that the defendant falls under the first category, as he was previously convicted of an enumerated sexual offense, and is currently in custody as a result of a conviction for violating his Rhode Island probation. In the Commonwealth's view, the fact that the defendant is not currently serving a Massachusetts sentence makes no difference concerning its authority to petition for his commitment in Massachusetts.[7]  Its position was that G. L. c. 123A confers the authority to file a petition against a person serving an out-of-State sentence anywhere in the country, so long as he or she

As mentioned, this court clarified in Libby that § 12 (a) also defines "the three categories of persons . . . who are subject to the filing of an SDP petition."  Id. at 100.  Narrowly construing the statute, the court held that an SDP petition under § 12 (b) may be filed "against a person who has been convicted of a sexual offense only where the person is in custody because of a criminal conviction, an adjudication as a delinquent juvenile or youthful offender, or a judicial finding that the person is incompetent to stand trial."  Id. at 93. Necessarily, this also means that these are the three categories of persons for whom notice must be given under § 12 (a) -- and hence, we articulate these three categories using the language from Libby, rather than the literal language of § 12 (a).  It is also important to note that the court's interpretation in Libby was based in part on its explanation that the phrase in § 12 (a), "regardless of the reason for the current incarceration, confinement or commitment," was intended only to "allow an SDP petition to be filed against a person convicted of a sexual offense who was serving a sentence for a nonsexual offense, or who was found incompetent to stand trial on a nonsexual offense."  Libby at 97.

[7] The Commonwealth conceded in the Superior Court that the defendant's transfer to Massachusetts under the NEICC did not transform his Rhode Island probation sentence into a Massachusetts sentence.

previously committed a sex offense in Massachusetts.  The defendant moved to dismiss, arguing in part that the Commonwealth lacks jurisdiction because he was not serving a Massachusetts sentence at the time the Commonwealth filed the petition.  The Superior Court judge agreed, finding an absence of legislative intent that the SDP commitment scheme should extend to prisoners of other States.  He also noted that "[t]he Commonwealth's interpretation would drastically expand the scope of the SDP statute, implicating due process concerns."

Because G. L. c. 123A is a statute in derogation of liberty, we must interpret its terms narrowly.  Commonwealth v. Gillis, 448 Mass. 354, 357 (2007).  This "more stringent analysis . . . not only helps avoid possible constitutional due process problems . . . but also helps ensure that individuals are not deprived of liberty without a clear statement of legislative intent to do so."  Id., citing Commonwealth v. Nieves, 446 Mass. 583, 597-598 (2006).  Accordingly, our courts have consistently declined to broaden the class of persons subject to SDP commitment in the absence of such a clear statement of legislative intent.  Gillis, supra at 358, citing Commonwealth v. McLeod, 437 Mass. 286, 294 (2002).  See, e.g., Gillis, supra at 354-355 (individuals not serving any criminal sentence and have no pending charges, but who are in State custody as result of civil commitment due to mental

illness, not subject to SDP proceedings); Commonwealth v. Allen, 73 Mass. App. Ct. 862, 864 (2009) (individual who had completed criminal sentence, yet remained in custody solely due to clerical error, not "prisoner" subject to commitment); Coffin v. Superintendent, Mass. Treatment Ctr., 458 Mass. 186, 187 (2010) (Commonwealth may not petition for commitment of individual incarcerated for violating terms of sentence imposed under unconstitutional statute); Libby, 472 Mass. at 100 (persons previously convicted of sexual offense who are currently in custody awaiting trial not subject to SDP commitment).

In support of its position that a § 12 (b) petition may be filed against an out-of-State prisoner, the Commonwealth cites the plain language of the statute, which permits a commitment petition to be filed against a "prisoner," without any qualifier. The Legislature never restricted § 12 (b) solely to "Massachusetts prisoners," the Commonwealth argues, and by imposing such a limitation the motion judge effectively rewrote the statute, by inserting the word "Massachusetts." The Commonwealth suggests that the all-purpose definition of "prisoner" is contained in G. L. c. 125, § 1 (m), which defines that term as "a committed offender and such other person as is placed in custody in a correctional facility in accordance with

law."[8]  Gardner fits these definitions, the Commonwealth posits, as he was found in violation of his Rhode Island probation, Rhode Island sentenced him to one year in prison, and he is presently in custody serving that sentence in a correctional facility.

Our cases make clear, however, that "[i]n determining eligibility for civil commitment, the fact of custody alone is not determinative. . . . Nor is it enough that an individual is serving a sentence."  Coffin, 458 Mass. at 189, citing Allen, 73 Mass. App. Ct. at 864.  Likewise, this court rejected the Commonwealth's argument that the definition of "prisoner" in G. L. c. 125, § 1 (m), applies in the SDP context over a decade ago, in Gillis, 448 Mass. at 358-359.  See Allen, 73 Mass. App. Ct. at 864, citing Gillis, supra ("the Supreme Judicial Court has held that the definition of 'prisoner' contained in G. L. c. 125, § 1 (m), . . . is not to be used for G. L. c. 123A, § 12 [b]").  There we observed that G. L. c. 125, § 1, states that its definitions shall apply "unless the context otherwise requires," and we held that "the context of the SDP statute" -- a statute in derogation of liberty -- "requires a construction

_____

[8] "Committed offender" is defined as "a person convicted of a crime and committed, under sentence, to a correctional facility."  G. L. c. 125, § 1 (c).  "Correctional facility" refers to "any building . . . used for the custody, control and rehabilitation of committed offenders and of such other persons as may be placed in custody therein in accordance with law."  G. L. c. 123A, § 1 (d).

of 'prisoner' that is no broader than its ordinary usage." Gillis, supra at 359. Accordingly, the court adopted, for purposes of deciding that case, the more narrow, dictionary definition of "prisoner," which is "an individual who is either serving a criminal sentence or awaiting trial." Id. at 358-259 citing 12 Oxford English Dictionary 513 (2d ed. 1989).[9]

Examining § 12 (b) in its proper context, and as part of G. L. c. 123A as a whole, see Commonwealth v. Poissant, 443 Mass. 558, 563 (2005) (we interpret SDP statute "as a whole to produce an internal consistency" [citation omitted]), we discern no legislative intent to commit out-of-State prisoners. To the contrary, the several provisions of G. L. c. 123A that make up the commitment procedure evince a legislative recognition that the Commonwealth may only commit those within its own custody. Under § 12 (a), which informs our understanding of "prisoner or youth" in § 12 (b), see Libby, 472 Mass. at 95, and which represents the first step in the commitment process, see Nieves, 446 Mass. at 586, an "agency with jurisdiction" over the person

---

[9] Subsequently, in Libby, 472 Mass. at 99-100, we clarified that our adoption of the dictionary definition of "prisoner" was for purposes of deciding the issue in Commonwealth v. Gillis, 448 Mass. 354, 358-359 (2007), and that persons in custody "awaiting trial" are not in fact subject to commitment under G. L. c. 123A. "[I]t would be unreasonable to strip the words 'prisoner or youth' from their context in § 12 (b), apply their dictionary definitions, and conclude that the Legislature intended that a district attorney may file an SDP petition against any prisoner or youth, as those words are commonly used." Libby, supra at 100.

named in the petition "shall notify in writing" the relevant district attorney and the Attorney General six months prior to the prisoner's release, and "shall also identify those prisoners . . . who have a particularly high likelihood of meeting the criteria for a sexually dangerous person." See Commonwealth v. Kennedy, 435 Mass. 527, 530 (2001) ("The word 'shall' in this context, where substantive rights are involved, indicates that the action is mandatory. This imperative is at its strongest in such cases"). "Agency with jurisdiction" is defined as "the agency with the authority to direct the release of a person presently incarcerated, confined, or committed." G. L. c. 123A, § 1.

Under the Commonwealth's interpretation, in the case of an out-of-State prisoner, § 12 (a) would constitute a directive from Massachusetts to an agency of another State (for that State would possess "the authority to direct the release of [the] [prisoner]," § 1), to undertake such tasks as an analysis of Massachusetts law. We decline to interpret G. L. c. 123A in this manner, because legally and practically, the Legislature is powerless to impose such obligations on another State. See, e.g., New York Life Ins. Co. v. Head, 234 U.S. 149, 161 (1914) ("it would be impossible to permit the statutes of [one State] to operate beyond the jurisdiction of that State . . . without throwing down the constitutional barriers by which all the

States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends").

The Commonwealth's argument fares no better even if it took the more narrow position that although SDP petitions generally cannot be filed against out-of-State prisoners, the defendant is in fact a Massachusetts prisoner due to his transfer to a Massachusetts correctional institution under the NEICC.[10]  The NEICC states that "[i]nmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state . . . ."  This provision is incorporated into the Federal and Interstate Compact policies and procedures of the Department of Correction.  See 103 DOC 419.09 (2017) ("[i]nmates confined in an institution pursuant to the provisions of the [NEICC] shall be subject to the jurisdiction of the sending state").  Even in these circumstances, then, the "agency with jurisdiction" over the

_____

[10] Although the Commonwealth's position in the Superior Court was that the defendant's transfer to Massachusetts under NEICC was irrelevant to its authority to petition for his commitment here, at oral argument before this court, the Commonwealth seemed to agree that had the defendant remained in Rhode Island and finished serving his sentence there, the Commonwealth would be powerless to initiate commitment proceedings against him.

defendant remained a Rhode Island agency, not the Massachusetts Department of Correction. Likewise, the purpose of the six-month notice requirement in § 12 (a) is to ensure "that the Commonwealth will be in a position to complete most, if not all, of the G. L. c. 123A proceedings before the inmate's discharge." Kennedy, 435 Mass. at 530-531. This cannot reasonably apply to prisoners such as the defendant who are transferred under the NEICC, because the agreement states that they can be removed from the Commonwealth "at any time." We applied the same reasoning in Libby to reject the Commonwealth's argument that a § 12 (b) petition may be filed against a person held in custody before trial solely due to an inability to post bail. See Libby, supra at 99 ("Such a notice requirement reasonably could not be applied to a person who is in custody only because of an inability to post bail, who could obtain immediate release upon posting bail. . . . If the Legislature had contemplated that an SDP petition could be filed after a person's arrest while that person was in custody awaiting a bail determination or seeking the funds to post bail, it would have recognized this possibility in its notice provision").

That the Legislature intended SDP commitment to extend only to those "prisoner[s] or youth[s]" within Massachusetts custody is further demonstrated by the other procedural components of G. L. c. 123A. After notice under § 12 (a), and the filing of the

§ 12 (b) petition, the court holds a hearing under § 12 (c) to determine whether there is probable cause to believe that the person named in the petition is sexually dangerous. Here the Legislature specified that the prisoner "shall be provided . . . an opportunity to appear in person" at the hearing, which would generally be impossible if he or she were in the custody of another State.

Likewise, G. L. c. 123A, §§ 12 (e), 13 (a), and 14 (a), authorize the temporary commitment of the person named in the petition for the course of commitment proceedings; in particular, § 13 (a) directs that the individual "shall" be held for the purposes of psychological examination and trial. This provision assumes that the Commonwealth has access to the person named in the petition, which, in the case of an out-of-State prisoner, would be possible only through the cooperation of another State sending its prisoner to Massachusetts, before the prisoner has completed his or her sentence in that State, for indefinite commitment here. It makes no sense that the Legislature would employ the word "shall" in this context, to impose several procedural requirements that in reality could only happen for out-of-State prisoners through the voluntary (and perhaps unlikely) act of another sovereign. The far more sensible interpretation, and the one that gives greatest effect to the terms of G. L. c. 123A, is that the Legislature intended

SDP commitment to extend only to those "prisoner[s] or youth[s]" already in the Commonwealth's custody, serving a sentence here, when the § 12 (b) petition is filed. See Chin v. Merriot, 470 Mass. 527, 537 (2015) ("we give effect to all words of a statute, assuming none to be superfluous" [quotations and citation omitted]).

We note finally that this limitation is also necessary from a jurisdictional standpoint. If the Commonwealth is to deprive an individual of his or her liberty "for an indeterminate period of a minimum of one day and a maximum of such person's natural life," as the SDP statute provides, see G. L. c. 123A, § 14 (d), there must be some jurisdictional basis -- a nexus to Massachusetts -- for that act. See, e.g., J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880 (2011) ("As a general rule" under due process clause, "neither statute nor judicial decree may bind strangers to the State"). In the Superior Court, the Commonwealth argued that this nexus is established by a requirement that a prisoner has previously committed a sexual offense in Massachusetts. As the Superior Court judge explained, "the Commonwealth's position is that Chapter 123A confers the authority to file a petition against a prisoner serving an out of state sentence anywhere in the country, as long as he committed a sex offense in the Commonwealth at some point in the past". Although on the particular facts of this

case, the defendant committed several sexual offenses in Massachusetts, that is not a prerequisite to his eligibility for commitment under the scheme enacted by the Legislature.  In defining "sexual offense" -- the principal predicate for consideration as an SDP -- the Legislature included not only Massachusetts offenses, but also "like violation[s] of the laws of another state, the United States, or a military, territorial or Indian tribal authority."  G. L. c. 123A, § 1.  Were we to agree with the Commonwealth that G. L. c. 123A permits the commitment of out-of-State prisoners, in addition to those who have previously committed solely out-of-State sexual offenses, as the Legislature has already provided, the result would be that § 12 (b) petitions could be filed against individuals with no connection to Massachusetts whatsoever.  That cannot be the case if G. L. c. 123A is to comport with due process. See Commonwealth v. Lamb, 365 Mass. 265, 269 (1974) ("We must construe [G. L. c. 123A], if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score" [quotations and citation omitted]).

Conclusion.  We affirm the Superior Court judge's dismissal of the petition, and remand the case for proceedings consistent with this opinion.

So ordered.